# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Coast Vapor, LLC,        :
               Petitioner      :
               :
          v.             :    No. 515 M.D. 2017
               :    Argued:  April 11, 2018
Pennsylvania Department of Revenue,    :
             Respondent    :

**BEFORE:**    **HONORABLE MARY HANNAH LEAVITT,** President Judge
                **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE ROBERT SIMPSON,** Judge
                **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                **HONORABLE MICHAEL H. WOJCIK,** Judge
                **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                **HONORABLE ELLEN CEISLER,** Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED:  June 22, 2018**

We are asked to decide whether including in the definition of "tobacco products" under the Tobacco Products Tax Act (TPTA),[1] "electronic cigarettes" (e-cigarettes), when they do not deliver tobacco, as well as "e-liquids" that do not contain nicotine or contain nicotine derived from a source other than tobacco, violates the Due Process Clauses of the United States and Pennsylvania Constitutions.  East Coast Vapor, LLC (Petitioner), has filed a Petition for Review (Petition) in this Court's original jurisdiction and an Application for Summary Relief (Application) on its Petition seeking a declaratory judgment that the General

---

[1] Act of March 4, 1971, P.L. 6, added by Section 18 of the Act of July 13, 2016, P.L. 526, 72 P.S. §§ 8201-A–8234-A.

Assembly's inclusion of these items under the definition of "tobacco products" violates the Constitutions. Petitioner similarly claims that Pennsylvania Department of Revenue's (DOR) imposition of the TPTA tax on separately packaged component parts of an e-cigarette that DOR considers "integral" to the e-cigarette device violates due process because the "integral" component parts do not deliver tobacco. Petitioner also argues that DOR's interpretation of the TPTA as separately taxing the "integral" component parts of an e-cigarette is unsupported by the TPTA's plain language and violates the Uniformity Clause of the Pennsylvania Constitution.[2] DOR counters that Petitioner prematurely invoked this Court's jurisdiction and should have first exhausted its available administrative remedies by presenting its claims to the Board of Finance and Revenue (Board). DOR contends that Petitioner may not bypass the Board because Petitioner has not raised a substantial constitutional challenge to the TPTA and the Board's review is an available and adequate remedy.

Petitioner's claim in this case, that the definition of "tobacco products" in the TPTA, on its face, violates the right to substantive due process under the United States and Pennsylvania Constitutions by including items that contain or deliver nicotine even though those products are neither derived from, nor use tobacco, constitutes a direct attack on the validity of the TPTA. Petitioner, therefore, did not need to raise this issue first before the Board. We therefore reach the merits, and hold that there is a rational basis for the General Assembly to define the e-cigarette device and e-liquid that contains nicotine as "tobacco products." However, the plain

---

[2] The Uniformity Clause of the Pennsylvania Constitution provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1.

2

language of the TPTA does not support authorizing DOR to tax separately packaged component parts of an e-cigarette that DOR considers "integral" to the e-cigarette.

## I.     The TPTA and Petitioner's Substantive Due Process Claim

In considering the applicability of the TPTA to e-cigarettes and e-liquids, it is helpful to understand how an e-cigarette operates. An "electronic oral device" is generally composed of a mouthpiece, a tank, a heating element, and a battery. (Hr'g Tr., Jan. 10, 2018, at 24, 49.)[3] An "e-liquid"[4] is placed into the tank, and when the device is turned on, the battery powers the heating element, which heats the e-liquid into a vapor. A person inhales the vapor through the mouthpiece. (*Id.* at 24-25, 51-52.) This process is sometimes referred to as vaping. E-liquid can contain nicotine in varying concentrations, up to 24 milligrams. (*Id.* at 52-53.)

The TPTA imposes a 40 percent tax on "tobacco products," which includes "electronic cigarettes." Sections 1201-A, 1202-A(a.1) of the TPTA, 72 P.S. §§ 8201-A, 8202-A(a.1).[5] The TPTA defines "electronic cigarettes" as follows:

---

[3] The Application included a request for special relief in the form of preliminary injunctive relief, which, after an evidentiary hearing, this Court granted in part and denied in part by an Opinion and Order dated January 31, 2018. *East Coast Vapor, LLC v. Pa. Dep't of Revenue* (Pa. Cmwlth., Nos. 48 M.D. 2017, 515 M.D. 2017, filed Jan. 31, 2018) (Cohn Jubelirer, J., single judge op.) (*East Coast Vapor I*).

[4] E-liquid primarily consists of propylene glycol, vegetable glycerin, water, and flavoring. (Hr'g Tr., Jan. 10, 2018, at 52.)

[5] Section 1201-A of the TPTA defines "tobacco products" as follows:

(1) **Electronic cigarettes**.

(2) Roll-your-own tobacco.

(3) Periques, granulated, plug cut, crimp cut, ready rubbed and other smoking tobacco, snuff, dry snuff, snuff flour, cavendish, plug and twist tobacco, fine-cut and other chewing tobaccos, shorts, refuse scraps, clippings, cuttings and

(1)    **An** electronic oral **device**, such as one composed of a heating element and battery or electronic circuit, or both, **which provides a vapor** of nicotine or any other substance and the use or inhalation of which simulates smoking.

(2)    The term includes:

(i)    **A device** as described in paragraph (1), notwithstanding whether the device is manufactured, distributed, marketed or sold as an e-cigarette, e-cigar and e-pipe or under any other product, name or description.

(ii)    **A liquid** or substance placed in or sold for use in an electronic cigarette.

72 P.S. § 8201-A (emphasis added).   The 40 percent tax is imposed on the manufacture and wholesale of "electronic cigarettes," which includes both the device and e-liquid.   72 P.S. § 8202-A(a.1).

---

sweepings of tobacco and other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or ingesting or for smoking in a pipe or otherwise, or any combination of chewing, ingesting or smoking.

(4) The term does not include:

(i)  Any item subject to the tax under section 1206.

(ii) Cigars.

72 P.S. § 8201-A (emphasis added).  Section 1202-A(a.1) provides,

**(a.1) Imposition of tax on electronic cigarettes.--**A tobacco products tax is imposed on the dealer or manufacturer at the time the electronic cigarette is first sold to a retailer in this Commonwealth at the rate of 40% on the purchase price charged to the retailer for the purchase of electronic cigarettes.  The tax shall be collected for the retailer by whomever sells the electronic cigarette to the retailer and remitted to the department.  Any person required to collect this tax shall separately state the amount of tax on an invoice or other sales document.

72 P.S. § 8202-A(a.1).

## A.    Petitioner's Argument

Petitioner argues that the TPTA's definition of an e-cigarette as a type of "tobacco product" violates the Due Process Clauses of the United States and Pennsylvania Constitutions.[6]    According to Petitioner, the TPTA's definition includes items that are neither used to deliver tobacco, nor are actually derived from tobacco. These items include:  the "electronic oral device," *i.e.*, the e-cigarette; the separately packaged component parts of the e-cigarette that DOR considers "integral" to it; "e-liquid that contains no nicotine"; and "e-liquid that contains nicotine that is not derived from tobacco" but from another source, such as eggplants, potatoes, or tomatoes.  (Petition ¶¶ 27, 58-59, 67, 143, 180; Petitioner's Brief (Br.) at 28.)   Therefore, according to Petitioner, these items "are both logically and scientifically not a tobacco product."   (Petitioner's Br. at 31.)   The General Assembly, Petitioner argues, sought to justify its taxation of these items on the basis that they contain or deliver nicotine, but the General Assembly has not made the required showing that e-cigarettes are harmful to one's health.  Moreover, according to Petitioner, "there is no rational basis for including e-liquid . . . without nicotine in the definition of 'tobacco products,'" while "not taxing nicotine products sold by pharmaceutical companies and pharmacies as 'tobacco products.'" (*Id.*)  Therefore,

---

[6] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Due process under the Pennsylvania Constitution emanates from a number of provisions, including article I, sections 9 and 11.  Article I, section 9 provides, in pertinent part, that a person shall not be "deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."  Pa. Const. art. I, § 9.  Article I, section 11 provides, in pertinent part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law . . . ."  Pa. Const. art. I, § 11.

Petitioner seeks a judgment declaring that the definition of "tobacco products" as including items not derived or related to tobacco violates its substantive due process rights under the United States and Pennsylvania Constitutions.

### B. DOR's Response – Failure to Exhaust Administrative Remedies

### 1. DOR's Argument

In response, DOR first argues that the Court should dismiss the Petition because Petitioner has not exhausted its administrative remedies. DOR notes that Petitioner claims it is aggrieved by the unlawful collection of taxes, which, DOR argues, Petitioner may contest by petitioning the Board pursuant to Section 503(e) of the Fiscal Code, 72 P.S. § 503(e).[7] DOR claims "a cursory review of the Petition" shows that Petitioner has not raised a substantial constitutional challenge, so it may not bypass the administrative review process. (DOR's Br. at 9.) Instead, Petitioner merely alleges unconstitutionality and challenges DOR's interpretation of the TPTA. Petitioner has not shown, DOR argues, that it has suffered any harm because Petitioner has paid little in taxes. DOR further argues that "'all that [Petitioner] is complaining about is money[,]'" that is, the amount of tax Petitioner is required to pay based on what items are covered by the TPTA, which, if Petitioner's interpretation of the TPTA is correct, can be refunded to it through the administrative process. (*Id.* at 11-12 (quoting *Sands Bethworks Gaming, LLC v. Pa. Dep't of Revenue*, 958 A.2d 125, 131 (Pa. Cmwlth. 2008)).)

### 2. Petitioner's Argument

---

[7] Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. § 503(e). Section 503(e) of the Fiscal Code provides for a right of appeal to this Court by a party "aggrieved by the decision of the Board . . . on a petition for refund." *Id.*

In response, Petitioner argues that it is not required to exhaust its administrative remedies by going before the Board because it has brought a facial constitutional challenge to a statute. Therefore, the administrative agency is not competent to rule on the merits and, thus, the agency cannot provide complete and adequate relief.

### 3. Analysis

Whether Petitioner must exhaust its administrative remedies before invoking this Court's original equity jurisdiction is a threshold question.[8] Under the doctrine of exhaustion of administrative remedies, "a party must first exhaust its administrative remedies before invoking this Court's jurisdiction in challenging a final agency adjudication. The courts must refrain from exercising equity jurisdiction when there exists an adequate statutory remedy." *Keystone ReLeaf LLC v. Pa. Dep't of Health*, __ A.3d __, __ (Pa. Cmwlth., No. 399 M.D. 2017, filed Apr. 20, 2018), slip op. at 10 (citation omitted). The doctrine of exhaustion is codified in the Declaratory Judgments Act,[9] which sets forth that declaratory relief is not available "with respect to any . . . [p]roceeding within the exclusive jurisdiction of a tribunal other than a court." Section 7541(c)(2) of the Declaratory Judgments Act, 42 Pa. C.S. § 7541(c)(2); *see* Section 1504 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1504 ("In all cases where a remedy is provided . . . by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be

---

[8] Our Supreme Court has said that its "decisional law is not clear as to whether the exhaustion of statutory remedies doctrine implicates a court's jurisdiction, or whether the rule is a prudential concern serving as a pre-requisite to a court's exercise of its jurisdiction." *Office of Governor v. Donahue*, 98 A.3d 1223, 1231 n.7 (Pa. 2014).

[9] 42 Pa. C.S. §§ 7531-7541.

necessary for carrying such statute into effect."). The Declaratory Judgments Act reflects "that the Legislature retains the power to channel all issues, including constitutional ones, into a specified route of appeal, such as an administrative appeal before a state or local agency." *Beattie v. Allegheny Cty.*, 907 A.2d 519, 526 (Pa. 2006); *see Borough of Green Tree v. Bd. of Prop. Assessments, Appeals & Review of Allegheny Cty.*, 328 A.2d 819, 823 (Pa. 1974) (stating that the equitable jurisdiction of a trial court is subject to statutory limitations); *First Fed. Sav. & Loan Ass'n of Lancaster v. Swift*, 321 A.2d 895, 898 (Pa. 1974) (noting that equity must follow the law). In other words, equitable relief, as in the case of a declaratory judgment action, "cannot be granted to a party [that] has an adequate remedy at law" but has not exhausted that remedy. *Cherry v. City of Phila.*, 692 A.2d 1082, 1084 (Pa. 1997).

The rationale behind the doctrine of exhaustion of administrative remedies "not only reflects a recognition of the [G]eneral [A]ssembly's directive of strict compliance with statutorily-prescribed remedies, it also acknowledges that an unjustified failure to follow the administrative scheme undercuts the foundation upon which the administrative process was founded." *Shenango Valley Osteopathic Hosp. v. Dep't of Health*, 451 A.2d 434, 438 (Pa. 1982). If judicial intervention is premature, occurring before the administrative remedies have been exhausted, "the agency's opportunity to develop an adequate factual record" is restricted, the exercise of the agency's expertise is limited, and "the development of a cohesive body of law in that area" is impeded. *Id.* In addition, administrative review allows "the agency . . . to correct its own mistakes and to moot judicial controversies." *St. Clair v. Pa. Bd. of Prob. & Parole*, 493 A.2d 146, 152 (Pa. Cmwlth. 1985); *see Rochester & Pittsburgh Coal Co. v. Bd. of Assessment & Revision of Taxes of*

8

*Indiana Cty.*, 266 A.2d 78, 79 (Pa. 1970) ("It may well be that all problems will be worked out at [the administrative] stage, and neither party will be required to resort to the judicial system.").

There are, however, exceptions to the general rule that obviate the requirement of exhaustion. One "narrow" exception arises where a substantial question of constitutionality is raised. *Parsowith v. Dep't of Revenue*, 723 A.2d 659, 662 (Pa. 1999). A substantial question of constitutionality is one that challenges "the validity of the statute as a whole and not simply a challenge to the application of the statute to a particular party." *Cherry*, 692 A.2d at 1084. In other words, there must be a facial or direct challenge to the statute, as opposed to an as-applied challenge.[10] "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012) (quotation omitted). In contrast, an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Id.* (quotation omitted). An administrative agency cannot find its enabling legislation to be unconstitutional – only a court can do so. However, an agency can alter its interpretation of the statute

---

[10] Our Supreme Court has stated that an as-applied challenge can meet the substantial question of constitutionality test. *Beattie*, 907 A.2d at 528. Although our Supreme Court in *Beattie* dismissed the complaint for lack of specificity, the Supreme Court asked whether "a substantial constitutional issue c[ould] ever be present based solely upon the manner in which the governing taxing statute is applied[,]" and concluded that it could be. *Id.* As an "extreme example," our Supreme Court posited the case where a sophisticated computer system was used to assess hundreds of thousands of properties within a short timeframe but a patent defect in the system caused severe disparities as to subclasses of property. *Id.* Under those circumstances, the Supreme Court stated, "it would make little sense to conclude that no substantial constitutional issue was raised simply because the relevant taxing statutes . . . were not being challenged on their face." *Id.* at 528-29.

to conform to constitutional principles. *Lehman v. Pa. State Police*, 839 A.2d 265, 276 (Pa. 2003). Thus, where a facial challenge to a statute is raised, the agency cannot provide an adequate remedy, unlike an as-applied challenge. *Borough of Green Tree*, 328 A.2d at 825.

Our Supreme Court's decision in *Parsowith* provides an example of a facial constitutional challenge. There, Mrs. Parsowith attacked the disparity in tax treatment of property passing to or for use of a surviving spouse "as between widows whose husbands died after January 1, 1995, . . . and widows whose husbands died before the effective dates for the reduced tax rates . . . ." *Parsowith*, 723 A.2d at 661. This Court dismissed Mrs. Parsowith's petition for review, concluding that she had to exhaust her statutorily-prescribed remedies with the Board. Our Supreme Court disagreed, holding that Mrs. Parsowith's claim "constitutes an attack upon the statutory scheme of taxation, rather than upon administrative interpretation alone." *Id.* The Supreme Court pointed out that all that had to be examined were the "**express provisions**" of Section 2116 of the Inheritance and Estate Tax Act,[11] such as making the date the tax was due and payable as the decedent's date of death. *Id.* at 662 (emphasis added). Indeed, the Court commented, "it would be impossible to construe the statute in any other manner than as tying the tax, including the applicable rate and the ultimate amount of the tax, to the date of the decedent's death." *Id.* Therefore, Mrs. Parsowith was making a "direct attack upon a legislative scheme of taxation," which was appropriate for judicial, not administrative, review. *Id.* The Court, thus, went on to reach the merits.

As in *Parsowith*, Petitioner here has brought a facial constitutional challenge to the TPTA. Claiming that the TPTA violates substantive due process by defining

---

[11] Act of March 4, 1971, P.L. 6, added by Section 36 of the Act of August 4, 1991, P.L. 97, *as amended*, 72 P.S. § 9116.

10

products that contain or deliver nicotine, but are not derived from or use tobacco, as "tobacco products" subject to a 40 percent tax, is a direct attack on the TPTA. We need not go beyond the "express provisions" of the TPTA, or engage in any additional fact finding in order to resolve Petitioner's claim. *See id.* at 662. We simply need to decide whether it is a violation of substantive due process for the General Assembly to define "tobacco products" as items that have or deliver nicotine, even when these items are not derived from or use tobacco.

Therefore, because Petitioner has raised a substantial constitutional challenge, it does not have to exhaust its administrative remedies. Accordingly, we will address the merits of Petitioner's substantive due process claim.

### C. DOR's Response to the Merits of Petitioner's Substantive Due Process Claim

#### 1. Petitioner's Argument Summarized

Although set forth more in depth previously, Petitioner's merits' argument may be summarized as it is a violation of substantive due process for the TPTA to tax items that do not contain or deliver tobacco as "tobacco products." Since these items have no relation to tobacco, Petitioner argues it is irrational to call them "tobacco products."

#### 2. DOR's Argument

DOR responds that there is a rational basis for taxing the "electronic oral device" and e-liquid containing nicotine as "tobacco products." DOR asserts that it is rational because nicotine is common to both tobacco and some e-liquids, nicotine is addictive, and users of e-cigarettes, particularly younger users, once addicted, may turn to smoking cigarettes. DOR points to the General Assembly's passage of

Section 2 of the Tobacco Settlement Agreement Act,[12] 35 P.S. § 5672, as proof of the General Assembly's recognition of the dangers and costs associated with using cigarettes. DOR argues that the tax helps bear the costs of harm resulting from the use of "tobacco products," such as e-cigarettes, while deterring younger people from using these products because of their increased cost. These are rational bases for taxing e-cigarettes, DOR claims. As for e-liquid allegedly containing no nicotine, citing to a study contained in a Food and Drug Administration (FDA) Final Rule, DOR counters that e-liquid claiming to have no nicotine, in fact, often contains nicotine. (DOR's Br. at 22 (citing Deeming Tobacco Prods. To Be Subject to the Fed. Food, Drug, and Cosmetic Act, 81 Fed. Reg. 28974, 29034 (May 10, 2016) (to be codified at 21 C.F.R. pt. 1100, 1140, 1143)).)[13] Discovery of the facts is needed on this issue, DOR argues. In any event, DOR contends, this may be a de minimis issue because vaping devices are intended to deliver nicotine to persons addicted to it.

### 3. Analysis

We begin our analysis by setting forth basic due process principles. "The substantive protections of due process are meant to protect citizens from arbitrary and irrational actions of the government." *Gresock v. City of Pittsburgh Civil Serv. Comm'n*, 698 A.2d 163, 169 (Pa. Cmwlth. 1997) (citation omitted). In the areas of social and economic legislation, which are important but not fundamental rights under the Pennsylvania Constitution, the test for substantive due process is the

---

[12] Act of June 22, 2000, P.L. 394, 35 P.S. § 5672.

[13] This FDA Final Rule contains the comments and responses to the FDA's proposed rule to deem certain "tobacco products" as subject to the Federal Food, Drug, and Cosmetic Act. The Final Rule is now codified at 21 C.F.R. pt. 1100, 1140, 1143.

"*Gambone* [*v. Commonwealth*, 101 A.2d 634, 637 (Pa. 1954)] rational basis test." *Nixon v. Commonwealth*, 839 A.2d 277, 287 (Pa. 2003).[14] The statute must have a rational relationship to a valid state objective. *Id.* In other words, "a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained." *Gambone*, 101 A.2d at 637. When analyzing a facial constitutional challenge, our Supreme Court has applied the "plainly legitimate sweep" standard. *Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1224 (Pa. 2009). Under that standard**, the challenger** must "demonstrate that a 'substantial number' of the challenged statute's potential applications are unconstitutional." *Id.* at 1223 n.36 (citation omitted). "A party challenging the constitutionality of a statute bears a **very heavy burden**" in seeking to overcome the statute's presumptive validity and, therefore, a statute "will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Peake v. Commonwealth*, 132 A.3d 506, 516 (Pa. Cmwlth. 2015) (emphasis added). Moreover, since this is an application for summary relief, Petitioner must show that its right to judgment is clear and there are no material issues of fact in dispute. Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1532(b);[15] *Peake*, 132 A.3d at 516 n.13.

---

[14] Petitioner raises a substantive due process claim under both the United States and Pennsylvania Constitutions. Our Supreme Court has described the rational basis test used in substantive due process challenges under the Pennsylvania Constitution as "more restrictive" or less deferential than under the United States Constitution. *Nixon*, 839 A.2d at 287 n.15. Therefore, if Petitioner's challenge fails under the Pennsylvania Constitution, it necessarily fails under the United States Constitution.

[15] Under Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b).

Since DOR relies on Section 2 of the Tobacco Settlement Agreement Act as justification for taxing "electronic cigarettes" as "tobacco products," we set forth the General Assembly's policy declarations contained therein:

The General Assembly finds and declares as follows:

(1)    Cigarette smoking presents serious public health concerns to the Commonwealth and to the citizens of this Commonwealth.    The Surgeon General has determined that smoking causes lung cancer, heart disease and other serious diseases and that there are hundreds of thousands of tobacco-related deaths in the United States each year. These diseases most often do not appear until many years after the person in question begins smoking.

(2)    Cigarette smoking also presents serious financial concerns for the Commonwealth.    Under certain health care programs, the Commonwealth may provide medical assistance to eligible persons for health conditions associated with cigarette smoking, and those persons may be eligible to receive such medical assistance.

(3)    Under the health care programs described in paragraph (2), the Commonwealth pays millions of dollars each year to provide medical assistance for these persons for health conditions associated with cigarette smoking.

(4)    Financial burdens imposed on the Commonwealth by cigarette smoking should be borne by tobacco product manufacturers rather than by the Commonwealth to the extent that such manufacturers either determine to enter into a settlement with the Commonwealth or are found culpable by the courts.

(5)    On November 23, 1998, leading United States tobacco product manufacturers entered into a settlement agreement, entitled the "Master Settlement Agreement," with the Commonwealth.    The Master Settlement Agreement obligates these manufacturers, in return for a release of past, present and certain future claims against those manufacturers as described therein, to:

    (i)    Pay substantial sums to the Commonwealth, tied in part to those manufacturers' volume of sales.

14

(ii)  Fund a national foundation devoted to the interests of public health.

(iii)  Make substantial changes in the manufacturers' advertising and marketing practices and corporate culture with the intention of reducing underage smoking.

***

35 P.S. § 5672.

Petitioner has challenged the inclusion of both the "electronic oral device" that is used to vape e-liquid and the e-liquid itself as "tobacco products." Beginning with the former, although the "electronic oral device" can be used to vape a variety of e-liquids, some containing nicotine from a source other than tobacco and some, allegedly, containing zero nicotine, Petitioner acknowledges that there are "substances that can be used to vape that include nicotine derived from tobacco." (Petition ¶ 112.) Since, as Petitioner acknowledges, the "electronic oral device" **can** be used to vape e-liquid containing nicotine derived from tobacco, the "electronic oral device" has the capability of delivering a "tobacco product." Therefore, there is a rational basis for including "the electronic oral device" in the definition of a "tobacco product."

As for e-liquid containing nicotine from a source other than tobacco, the General Assembly had legitimate state objectives for electing to tax those items. The Surgeon General attributed the prevalence of disease and death stemming from cigarette use to nicotine, which is highly addictive. Office of Smoking and Health, U.S. Dep't of Health & Human Servs., The Health Consequences of Smoking: Nicotine Addiction:  a Report of the Surgeon General at 9 (1988) (concluding that "[c]igarettes and other forms of tobacco are addicting," that it is the nicotine contained "in tobacco that causes addiction," and that "[t]he pharmacologic and

15

behavioral processes that determine tobacco addiction are similar to those that determine addiction to drugs such as heroin and cocaine").[16] Persons, particularly young persons, who start using e-cigarettes and vape e-liquid containing nicotine from tobacco, may become addicted and turn to cigarettes, the use of which can cause diseases that are costly to treat and sometimes deadly. In other words, the use of an e-cigarette to vape e-liquid containing nicotine derived from tobacco is a potential gateway to the use of cigarettes. Section 2 of the Tobacco Settlement Agreement Act sets forth legitimate policy objectives seeking to curb the consumption of cigarettes, particularly by young people, in order to reduce the health and financial costs associated with smoking cigarettes.

It was these policies that the General Assembly had in mind when the TPTA legislation was proposed. In a March 17, 2015 House of Representatives co-sponsorship memorandum, the co-sponsors stated that they would be introducing legislation contained in House Bill 1213 (H.B. 1213),[17] "to enact a 40 percent tax on the wholesale price of other tobacco products (OTP) . . . which will include e-cigarettes." House of Representatives, Co-Sponsorship Mem., H.B. 1213, Mar. 17, 2015. The co-sponsors, citing the Centers for Disease Control and Prevention, noted that "tobacco use is the leading preventable cause of death in the United States." *Id.* According to the co-sponsors, about 22 percent of high school students had recently reported that they had used some kind of tobacco product. *Id.* In addition, the co-sponsors stated, while "new, unregulated technologies such as e-cigarettes are often billed as safer alternatives to traditional cigarettes," initial lab tests had "found

---

[16] The Surgeon General's report is available at https://profiles.nlm.nih.gov/ps/access/NNBBZD.pdf. (last visited June 19, 2018).

[17] The TPTA was ultimately included in House Bill 1198 (H.B. 1198); however, the TPTA is similar to the legislation proposed in H.B. 1213 in that both defined e-cigarettes as a type of "tobacco product," and both had nearly the same definition of "electronic cigarette."

detectable levels of carcinogens and toxic chemicals in" them. *Id.* In 2013 alone, the co-sponsors stated, "[m]ore than a quarter of a million youth who had never smoked a cigarette used electronic cigarettes." *Id.* This 40 percent tax, the co-sponsors asserted, would not only "serve as a barrier for people, especially children, to use OTPs and cigarettes, [but] it also will provide a significant source of revenue to the Commonwealth . . . ." *Id.* Once H.B. 1213 was introduced, the co-sponsors issued a news release, with one co-sponsor stating that "[m]any teens succumb to peer pressure by using tobacco products and end up becoming life-time users." News Release, Pa. House, Daley, Frankel Legislation Calls for Tax Increase on Cigarettes, Other Tobacco Products (May 21, 2015), http://pahouse.com/MDaley/InTheNews/NewsRelease/?id=66491 (last visited June 19, 2018). This co-sponsor found it "troubling" that "there are now alternative products, such as **e-cigarettes**, that are growing in popularity and have the **same addicting effects** as regular cigarettes." *Id.* (emphasis added).

Another state representative, in a co-sponsorship memorandum dated March 3, 2015, stated that he would soon introduce legislation, House Bill 1461 (H.B. 1461), to amend "the Tax Reform Code of 1971 to tax electronic cigarettes." House of Representatives, Co-Sponsorship Mem., H.B. 1461, Mar. 3, 2015.[18] This state representative stated that "the use of alternative nicotine products has been gaining popularity in the last few years," partly because people were using e-cigarettes to wean themselves off cigarettes. *Id.* While the state representative found this commendable, "cigarette taxes exist to raise funds for public health initiatives and

---

[18] This legislation would have defined the e-cigarette device as a "vapor product," and the e-liquid "solution or other material containing nicotine that is depleted as a vapor product is used" as a "[c]onsumable product." H.B. 1461, 2015 Sess. (Pa. 2015). H.B. 1461 would have imposed a tax "upon the sale or possession of vapor products within this Commonwealth at the rate of 5¢ per fluid milliliter of consumable product." *Id.*

to discourage our youths from smoking. As more people turn to electronic cigarettes, we need to re-capture the revenue necessary to keep those programs funded and discourage young people from **getting hooked on nicotine**." *Id.* (emphasis added). The proposed tax, he stated, would "walk the line" between "funding vital programs and discouraging young people from picking up potentially deadly habits, while not overburdening people" trying to quit smoking cigarettes. *Id.*

These express statements demonstrate that the General Assembly was concerned that young people who started using e-cigarettes would become addicted to nicotine and turn to cigarettes, the use of which can cause deadly diseases. It is undisputed that some e-liquid contains nicotine. At the preliminary injunction hearing, Joshua Sanders, Petitioner's owner, testified that Petitioner carries e-liquid containing varying concentrations of nicotine, ranging from 0 milligrams up to 24 milligrams. (Hr'g Tr., Jan. 10, 2018, at 52-53.) Petitioner has never alleged that the nicotine contained in e-liquid, albeit allegedly derived from a source other than tobacco, is any different than the nicotine contained in tobacco or any less addicting. Since nicotine is common to both tobacco and e-liquid, and Petitioner has never claimed that the nicotine found in tobacco is any different than the nicotine found in e-liquid, it makes no difference that the nicotine contained in e-liquid contains nicotine from a source other than tobacco. It is, therefore, not "unreasonable, unduly oppressive or patently beyond the necessities of the case" to tax a product that is similar to tobacco, when it contains nicotine and is addictive, as a tobacco product. *Gambone*, 101 A.2d at 637.

Moreover, the taxation of e-liquid that contains nicotine and the "electronic oral device" that can deliver such e-liquid bears a rational relationship to valid state

objectives, as the tax is designed to increase the cost to the consumer, which has the effect of discouraging consumption. With less consumption of e-cigarettes, fewer people may become addicted to nicotine, turn to cigarettes, and suffer the health problems associated therewith, which will, concomitantly, lower the health costs of having to treat the diseases associated with smoking.

In short, the General Assembly could have rationally concluded that taxing e-liquid that contains nicotine and the e-cigarette device that can deliver e-liquid containing nicotine as "tobacco products" under the TPTA would promote the legitimate state objectives identified in Section 2 of the Tobacco Settlement Agreement Act.

As for Petitioner's claim about zero-nicotine e-liquid, we need not consider that claim in this facial constitutional challenge. As previously stated, in order to be successful, a facial constitutional challenge requires the challenger to "demonstrate that a 'substantial number' of the challenged statute's potential applications are unconstitutional." *Clifton*, 969 A.2d at 1223 n.36. Taxing e-liquid that contains nicotine and the "electronic oral device" used to deliver such e-liquid as "tobacco products" is plainly legitimate. E-liquid that contains nicotine and the "electronic oral device" used to deliver such e-liquid covers a substantial number of potential applications of the TPTA. Thus, regardless of whether it may violate substantive due process to tax zero-nicotine e-liquid as a "tobacco product," Petitioner cannot succeed on its facial constitutional challenge to the TPTA.[19] Moreover, to the extent

---

[19] We do not address Petitioner's argument that taxing the "integral" component parts of an e-cigarette violates substantive due process because, as we discuss in the following section, the "integral" component parts of an e-cigarette are not taxable under the TPTA. Therefore, it is unnecessary to decide the substantive due process claim as it relates to the "integral" component parts of an e-cigarette. *See Johnson v. Dep't of Transp., Bureau of Driver Licensing*, 805 A.2d 644, 648 n.5 (Pa. Cmwlth. 2002) (stating that "when a case raises both constitutional and non-

19

zero-nicotine e-liquid exists as a factual matter, DOR will have an opportunity to interpret and apply the TPTA to those types of e-liquids. *Lehman*, 839 A.2d at 276 (noting that the agency has the authority "to interpret the statute it is charged with administering to avoid an unconstitutional application").

## II.    The TPTA and Petitioner's Claim that DOR May Not Tax Separately Packaged "Integral" Component Parts of an E-cigarette Under the Statutory Language[20]

### A.    The Parties' Competing Constructions of the TPTA[21]

#### 1.    Petitioner's Argument

Petitioner, noting that a taxing statute must be strictly construed, argues that DOR has rewritten the TPTA by taxing separately packaged component parts of an e-cigarette that DOR considers "integral." Petitioner points out that the TPTA does not contain the word "integral" and argues that the definition of "electronic cigarette" is limited to the "entire e-cigarette device" and the e-liquid or substance placed in the e-cigarette, not its individual component parts. (Petitioner's Br. at 23.) The General Assembly, Petitioner argues, could have easily defined an e-cigarette to include "integral" component parts if the General Assembly had wanted those items taxed when packaged separately, but it did not do so. Petitioner asserts that DOR has, therefore, rewritten the TPTA, which it may not do. While DOR attempts to justify its interpretation on the basis that an e-cigarette could be sold disassembled

---

constitutional issues, the court should not reach the constitutional issues if the case may properly be decided on non-constitutional grounds").

[20] A more detailed discussion of the factual background of this claim can be found in *East Coast Vapor I*.

[21] Although this is a statutory construction claim, and DOR argues that this claim should be subject to the exhaustion requirement, since Petitioner has also raised a facial constitutional challenge, we will decide all of Petitioner's claims.

in order to evade the tax, that issue is for the General Assembly to resolve, Petitioner argues. Based on Petitioner's interpretation of the TPTA, it claims that it owes a "Floor Tax" of only $2491,[22] and not, as DOR agents determined after conducting an inventory of Petitioner's shops in January 2017, a Floor Tax of $30,691.58 before any penalties are assessed.

### 2. DOR's Argument

DOR argues that "integral" component parts are those that can only be used in an e-cigarette. (Hr'g Tr., Jan. 10, 2018, at 141-43.) Previously, DOR had used a more expansive definition of component parts, but DOR has narrowed its definition to "integral" component parts, such as replacement coils, regulated mods, and tanks. (*Id.* at 143); *Kingdom Vapor v. Pa. Dep't of Revenue* (Pa. Cmwlth., No. 697 M.D. 2016, filed Jan. 31, 2018) (Cohn Jubelirer, J., single judge op.), slip op. at 17 (*Kingdom Vapor I*).[23] DOR contends that its interpretation of the TPTA's definition

---

[22] The TPTA imposes a one time "Floor Tax," requiring "[a]ny retailer that, as of . . . [October 1, 2016], possesses tobacco products subject to the tax imposed by Section 1202-A" to pay the 40 percent tax specified in Section 1202-A of the TPTA, as reported by the retailer on a form prescribed by DOR, by December 30, 2016. Section 1203-A(a)(1) of the TPTA, 72 P.S. § 8203-A(a)(1). In *East Coast Vapor I*, this Court ordered, *inter alia*, Petitioner to pay a Floor Tax of $2491, which DOR indicates Petitioner has paid. (DOR's Br. at 4-5.)

[23] The preliminary injunction hearing in *East Coast Vapor I* was heard with a request for preliminary injunctive relief in *Kingdom Vapor I* during which DOR and Kingdom Vapor stipulated to definitions of various vaping products, including replacement coils, regulated mods, and tanks. Petitioner has incorporated these definitions into its brief, which are as follows:

**Replacement Coils**: These are made from resistance wire and are used in a tank.

**Regulated Mod**: A power supply for an attached tank or atomizer. The device has a digital display allowing the user to adjust various settings. Without a tank/atomizer this cannot be used as an e-cigarette . . . .

21

of "electronic cigarettes" to include their separately packaged "integral" component parts is correct because otherwise vaping companies would simply disassemble the e-cigarette device, sell its parts separately, and have the purchaser reassemble the e-cigarette so as to evade the tax. The General Assembly, DOR argues, did not intend such an absurd result.

## B. Analysis

"Our goal in interpreting a statute is to ascertain and effectuate the intent of the legislature." *Mission Funding Alpha v. Commonwealth*, 173 A.3d 748, 757 (Pa. 2017). In general, the best indicator of the intent of the General Assembly is the plain language of the statute. *Id.* Words are to be construed in accordance with the rules of grammar and their common and approved usage or, when proper, according to their peculiar and appropriate or statutorily provided meanings. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(a). "[I]f the language of a statute is clear and unambiguous, a court must read its provisions in accordance with their plain meaning and common usage." *Mission Funding Alpha*, 173 A.3d at 763. However, the general rule that the plain language of the statute is the best indicator of the General Assembly's intent "is subject to several important qualifications, including . . . that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable." *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1068 (Pa. 2012) (citation omitted); *see* Section

---

*\*\*\**

**Tanks**: A part that holds a certain volume of e-liquid and contains a coil/heating element. Used in the PA Medical Marijuana industry and are tax exempt when used for that purpose.

*Kingdom Vapor I*, slip op. at 6-7 n.8; (*see also* Petitioner's Br. at 7 n.3).

22

1922(1) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1) (setting forth the presumption that the legislature does not intend an absurd result). In undertaking our analysis, we must keep in mind, that "[p]rovisions imposing taxes" must "be strictly construed," Section 1928(b)(3) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1928(b)(3), and "any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer." *Pa. Power & Light Co. v. Bd. of Fin. & Revenue*, 717 A.2d 504, 507 (Pa. 1998).

We begin with the plain language of the TPTA. The TPTA defines "tobacco products" to include "electronic cigarettes," which it further defines, in relevant part, as "**[a]n electronic oral device**, such as one composed of a heating element **and** battery or electronic circuit, or both, which provides a vapor of nicotine or any other substance and the use or inhalation of which simulates smoking." 72 P.S. § 8201-A (emphasis added). As can be seen from the plain language of the TPTA, Section 1201-A does not include the term "integral" or "component parts." Instead, it refers to a singular, integrated device that contains **both** a heating element and a power source, which, working together, provides a vapor. (Hr'g Tr., Jan. 10, 2018, at 50-51, 143 (testimony that the coil replacement contains a piece of wire that is used to heat the e-cigarette).) Therefore, "integral" component parts of an e-cigarette do not fit within the definition of "electronic cigarette."

What DOR would have us do, if we were to adopt its interpretation, is add terms to the TPTA under the guise of interpreting it, which we may not do. *Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014) ("[I]t is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.") (citation omitted). Had the General Assembly wanted to include as taxable the "integral" component parts of an e-cigarette, it could have easily done

so, as the federal statute does. *See* Section 201(rr)(1) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(rr)(1) (defining a "tobacco product" as "any product made or derived from tobacco that is intended for human consumption, including any **component**, **part**, or **accessory** of a tobacco product (except for raw materials other than tobacco used in manufacturing a component, part, or accessory of a tobacco product)") (emphasis added); Deeming Tobacco Prods. To Be Subject to the Fed. Food, Drug, and Cosmetic Act, 81 Fed. Reg. at 28975 (interpreting the "components" and "parts" of a "tobacco product" to include atomizers and batteries used in an e-cigarette). However, the General Assembly did not do so, and, contrary to DOR's assertion, a plain language interpretation of the TPTA does not lead to absurd results that would require us to otherwise rewrite the TPTA.

We can posit rational reasons why the General Assembly might have chosen to tax only the "electronic oral device" and not its component parts. The General Assembly might have thought, with the TPTA's already high rate of taxation, that also including the component parts of an e-cigarette would drive vaping companies out of business. The General Assembly might also have desired the TPTA to be easily administered and applied so that both the DOR and vaping companies would know what items are taxable. Of course, as with any tax, there will be some who seek to avoid or evade the tax. DOR, however, has the power to enforce the law and to lobby the legislature should evasion of the TPTA tax by disassembly of the "electronic oral device" prove to be widespread. We conclude that a plain language interpretation of the TPTA does not lead to absurd results merely because some vaping companies may attempt to evade the tax.

24

Therefore, we hold that DOR's interpretation of the TPTA to include as taxable separately packaged component parts of an e-cigarette that DOR considers "integral" is unsupported by the plain language of the TPTA.[24]

## III. Conclusion

Petitioner has raised a facial constitutional challenge to the TPTA by claiming that it is a violation of substantive due process for the TPTA to tax, as "tobacco products," products that contain or deliver nicotine even though those products are not derived from, nor use tobacco. This challenge may be presented to us without Petitioner first having to exhaust its administrative remedies. However, it is not a violation of substantive due process for the TPTA to tax as "tobacco products" the "electronic oral device" because it may be used to deliver e-liquid containing nicotine from tobacco. Nor is it a violation of substantive due process for the TPTA to tax as "tobacco products" e-liquid that contains nicotine from a non-tobacco source because the use of such e-liquid may lead the e-cigarette user to start smoking cigarettes. As such, Petitioner's facial constitutional challenge must fail. Petitioner's statutory construction claim, on the other hand, has merit. A plain reading of the TPTA does not support including the separately packaged component parts of an e-cigarette that DOR considers "integral" in the definition of "electronic cigarette." Those "integral" component parts of the e-cigarette device are not taxable under the TPTA. Therefore, we will grant the Petition and Application in part and deny it in part, and declare that these "integral" component parts of the e-cigarette device are not taxable under the TPTA.

---

[24] Although Petitioner also argues that DOR's interpretation of the TPTA constitutes a violation of the Uniformity Clause, Pa. Const. art. VIII, § 1, and the separation of powers doctrine, in light of our determination we need not address those arguments. *Johnson*, 805 A.2d at 648 n.5.

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Coast Vapor, LLC,           :
                Petitioner           :
                           :
            v.           :           No. 515 M.D. 2017
                           :
Pennsylvania Department of Revenue,           :
                Respondent           :

# O R D E R

NOW, June 22, 2018, the Application of East Coast Vapor, LLC (Petitioner), for Summary Relief (Application) on its Petition for Review is **GRANTED** to the extent it requests declaratory relief regarding the interpretation of the Pennsylvania Department of Revenue (DOR) to include as taxable under the Tobacco Products Tax Act (TPTA), Act of March 4, 1971, P.L. 6, added by Section 18 of the Act of July 13, 2016, P.L. 526, 72 P.S. §§ 8201-A–8234-A, the separately packaged component parts of an electronic cigarette (e-cigarette) that DOR considers "integral" to the e-cigarette. The Court hereby **DECLARES** that such "integral" component parts of an e-cigarette are not taxable under the TPTA. Petitioner's Application is **DENIED** to the extent it requests declaratory relief under the Due Process Clauses of the United States and Pennsylvania Constitutions.

                                _____
                                **RENÉE COHN JUBELIRER,** Judge