# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Haveman and          :
Amanda Spillane,                :
                Petitioners    :
                              :
           v.             :    No. 765 M.D. 2018
                              :    Argued: September 9, 2019
Bureau of Professional and     :
Occupational Affairs, State Board of  :
Cosmetology of the Commonwealth  :
of Pennsylvania,              :
                Respondent   :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE ELLEN CEISLER,** Judge
                **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: December 9, 2019**

Presently before the Court are the Preliminary Objections (POs) of the Bureau of Professional and Occupational Affairs, State Board of Cosmetology of the Commonwealth of Pennsylvania (Board) to the Petition for Review (Petition) filed by Courtney Haveman (Haveman) and Amanda Spillane (Spillane) (together, Petitioners) in this Court's original jurisdiction. Petitioners seek declaratory and injunctive relief, asserting that the good moral character requirement for limited cosmetology licensure under Section 5 of what is commonly known as the Beauty

Culture Law[1] is unconstitutional on its face.  Section 5 provides that an applicant for an esthetician license, nail technician license, or natural hair braiding license "shall be at least sixteen years of age, be of good moral character, have completed a tenth grade education or the equivalent thereof and pay the applicable fee to the board."[2] 63 P.S. § 511(a).

The Board has filed POs asserting that the relief Petitioners seek is barred by the doctrines of ripeness, standing, failure to exhaust administrative remedies, res judicata, collateral estoppel, untimeliness, or the statute of limitations.  After review, we overrule the Board's POs and direct the Board to file an answer.[3]

## I. Factual Background

### a. Petition

On December 11, 2018, Petitioners filed the Petition in the nature of a complaint for declaratory and injunctive relief, averring as follows.  Petitioners are both Pennsylvania residents who applied for limited cosmetology licenses from the Board and were denied licenses on the basis of poor moral character due to their past

---

[1] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. § 511.

[2] Esthetics is defined as "the practice of massaging the face, applying cosmetic preparations, antiseptics, tonics, lotions or creams to the face, removing superfluous hair by tweezers, depilatories or waxes, and the dyeing of eyelashes and eyebrows."  Section 1 of the Beauty Culture Law, 63 P.S. § 507.  A qualified applicant must have completed at least 250 hours of instruction in esthetics at a licensed cosmetology school, and taken the required examination in addition to the requirements set forth above.  63 P.S. § 511(b)(1).

[3] On November 14, 2019, the Board filed an Application in the Nature of a Motion for Protective Order/Motion for Stay (Application), in which it asked this Court to grant a protective order prohibiting depositions of certain individuals requested by Petitioners.  The Board also asked us to stay all additional discovery and objections thereto until 60 days after resolution of the POs. Given our disposition overruling the Board's POs and directing the Board to file an answer to the Petition, we deny this Application.

criminal conduct. Petitioners both sought limited licenses to become licensed estheticians.

### i. Haveman

With regard to Haveman, Petitioners aver the following. In 2016, Haveman completed a six-month program at the Bucks County School of Beauty Culture, which cost approximately $6000 and included a minimum of 300 hours of instruction, as required by law. (Petition ¶ 23.) Haveman was offered employment as an esthetician once she received her license; therefore, she applied in January 2016 to sit for the required exam and receive her license. The Board notified Haveman by letter dated March 16, 2016, that her application for a license could not be processed until she "submitted 'CERTIFIED COPIES of ALL documents related to' her [past] criminal convictions." (*Id.* ¶ 28.)

The Board was referencing criminal convictions arising between 2011 and 2013, in which Haveman pleaded guilty to certain misdemeanors. Haveman paid for, obtained, and submitted to the Board the necessary documents related to these convictions. By letter dated July 25, 2016, the Board "provisionally den[ied] Haveman]'s application," because Haveman's "misdemeanor record from 2011 to 2013 'suggest[ed] that [she] may not be of sufficient good moral character.'" (*Id.* ¶¶ 30, 31 (alterations in original).) The Board advised Haveman that she could appeal this decision and request a formal hearing, at which she would have the burden of proof to demonstrate her qualifications for "licensure and fitness to practice." (*Id.* ¶ 33.)

Haveman was unaware of the good moral character requirement until she was provisionally denied her license. Although Haveman considered hiring a lawyer,

she could not afford one and was "too intimidated to undergo a formal hearing on her own"; thus, she did not request one. (*Id.* ¶¶ 35, 36.) The Board issued a final order on October 7, 2016, denying Haveman's application. Haveman then wrote the Board, asking it to "take another look" at her application. (*Id.* ¶ 39.) In her letter, Haveman explained that it was her dream to be an esthetician and she had taken positive steps to turn her life around since her criminal conduct. Haveman stated that she sought to be honest and forthcoming on her licensure application and "paid all of the dues necessary to put [her] mistakes behind [her]." (*Id.*) The Board did not respond and Haveman did not file an administrative appeal. Haveman avers that she is now unable to work in her chosen occupation and, but for the good moral character requirement, Haveman "would re[]apply for, and be granted an esthetician license." (*Id.* ¶ 42.)

### ii. Spillane

With regard to Spillane, Petitioners aver the following. In 2014, Spillane completed an esthetician program at the Bucks County School of Beauty Culture, which cost approximately $6000 and included at least 300 hours of instruction, as required by law. Spillane was offered a job at a nail salon for when she was licensed. Spillane applied for her esthetician license in November 2014, and the Board provisionally denied the license by letter dated May 7, 2015. The Board explained that Spillane had prior convictions that indicated she did not have sufficient good moral character to obtain the license. Spillane's past criminal conduct arose from incidents occurring between 2005 and 2011, which resulted in Spillane pleading guilty to various offenses related to drug abuse.

4

Spillane requested a hearing and attended it with her parents. Spillane was unable to afford an attorney for this hearing. Spillane brought to the hearing reference letters from friends, family, and the Bucks County School of Beauty Culture. Spillane avers that she "was humiliated to have to explain to a government official that she is a good person," and both she and her father "cried during the hearing," where they testified and Spillane presented reference letters to demonstrate her good moral character to the Hearing Officer. (*Id.* ¶ 67.) The Hearing Officer issued a proposed order to deny Spillane's application, concluding in part that:

> Although [Spillane's] ability to maintain employment, complete esthetician training, and refrain from committing additional crimes since being released from prison is laudable, such accomplishments do not serve to negate the record of poor moral character [Spillane] developed over the course of several years so as to establish her current good moral character.

(*Id.* ¶ 69.) The Board adopted the Hearing Officer's findings and denied Spillane the license. Spillane did not appeal.

Petitioners allege that Spillane "has turned her life around" following her convictions, as she has "participated in intensive therapy," become "deeply religious," and properly manages her mental health through medication and a healthy lifestyle. (*Id.* ¶¶ 49, 50, 52-53.) Petitioners aver that because of the Board's denial of Spillane's license, she is unable to work and make a living in her chosen profession, and if the good moral character requirement for licensure was "ruled unconstitutional, [Spillane] would re[]apply for, and be granted, an esthetician license." (*Id.* ¶ 73.)

### iii. Board's Policy and Injury to Petitioners

Petitioners further aver that "the Board routinely denies applicants for both cosmetology and limited cosmetology licenses because of criminal convictions that have nothing to do with fitness to practice cosmetology," such as in the three years preceding 2018 when 27 of the 71 applicants provisionally denied licenses on the basis of poor moral character were issued final denials. (*Id.* ¶¶ 75-76.) Petitioners contend that the good moral character requirement discourages people from applying for a license and disproportionately affects lower income, non-college educated women. Further, the Board has no legitimate state interest or evidence that any denied applicants lack good moral character for a cosmetology license. The good moral character requirement does not protect the public where the criminal conduct is unrelated to the cosmetology profession. Petitioners assert this is demonstrated by the statutes and regulations governing licensure for barbers and other salon employees, which do not contain a good moral character prerequisite prior to licensure.

Petitioners assert that they meet all other requirements for an esthetician license. They spent time and money on education to obtain licensure but are either unemployed or working in a different field. Spillane spent time and money to travel to Harrisburg for her hearing, and both Petitioners would have to attend "time-consuming and humiliating hearing[s]" in order to reapply for licenses. (*Id*. at ¶ 115.) Petitioners are not willing to reapply for licensure while the good moral character requirement is in place. Petitioners emphasize that they "are not challenging their initial license denials or seeking damages based on those denials," but are "seeking relief only prospectively, based on the unconstitutional burden the good [moral] character requirement is imposing on them now." (*Id.* ¶ 122.)

6

iv. Claims for Relief

Petitioners allege a violation of their state substantive due process rights under article I, section 1 of the Pennsylvania Constitution,[4] which protects Petitioners' rights to pursue their chosen occupations free from "arbitrary and irrational legislation." (*Id.* ¶ 125.) Petitioners assert that the good moral character requirement is facially unconstitutional under article I, section 1 because it lacks a substantial relationship to a legitimate government interest and is unduly oppressive. Petitioners also allege that the good moral character requirement is facially unconstitutional under Pennsylvania's equal protection guarantee. Because Petitioners were treated differently from similarly situated individuals, such as prospective barber licensees, due to the good moral character requirement, Petitioners aver that the requirement is unduly oppressive. Petitioners assert that the good moral character requirement has no substantial or rational relationship to a legitimate government interest to justify this different treatment between similar individuals.

Petitioners seek a judgment declaring the good moral character requirement and all rules and regulations implementing that requirement facially violate the substantive due process and equal protection guarantees of the Pennsylvania Constitution. Petitioners also seek an order permanently enjoining enforcement of these provisions against any applicants, as well as attorney's fees, costs, expenses, and any other legal and equitable relief deemed proper by the Court.

---

[4] Article I, section 1 provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

7

*b. POs & Answer*

The Board filed the instant POs asserting: (1) lack of ripeness; (2) lack of standing; (3) failure to exhaust remedies, collateral estoppel, res judicata;[5] (4) untimely appeal; and (5) statute of limitations. Applicants filed an Answer to the POs, denying the Board's conclusions of law as to the applicability of the asserted POs.

## II. Standard

When ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations" in the Petition "and any reasonable inferences that we may draw from the averments." *Armstrong Cty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013). This Court is "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion[s]" in the Petition. *Id.* The POs should be sustained only if it "appear[s] with certainty that the law will not permit recovery." *Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006). Any doubt as to whether the POs should be sustained must be resolved in favor of overruling them. *Id.*

## III. Discussion

*a. Ripeness*

The Board asserts that Petitioners' claims are not ones upon which relief can presently be granted, as Petitioners do not have current applications before the Board and have averred that they will not submit new applications. As such, the Board

---

[5] We have combined these three separate grounds under one subsection in conformity with the Board's grouping of the POs in its brief.

8

contends that Petitioners' Petition is "a belated attempt to secure a retrospective opinion that they have been harmed by the Board's previous actions." (Board's Brief (Br.) at 11.)  Because Petitioners cannot establish likelihood of harm by operation of the good moral character requirement, the Board argues that Petitioners' claims are not ripe.[6]

Petitioners respond that they have averred facts that adequately develop the issues and that the parties will suffer hardship if review is delayed, which is sufficient for their claims to proceed beyond preliminary objections as to ripeness.  Petitioners raise a pure question of law – the constitutionality of the good moral character requirement, and further facts need not be developed to determine this.  Additionally, Petitioners contend that they will suffer hardship so long as the good moral character requirement remains, as they would have to expend time and resources to navigate the administrative process for license applications again.  Further, Petitioners assert that this Court has determined constitutional challenges are ripe even where a party has not entered the administrative process.  (Petitioners' Br. at 14 (citing *Pa. Indep. Oil & Gas Ass'n v. Dep't of Envtl. Prot.*, 135 A.3d 1118 (Pa. Cmwlth. 2015)).)  Since Petitioners assert they "are faced with an improper license requirement," their claims are ripe and well developed because Petitioners have already gone through the application process once.  (*Id.* at 15.)

The doctrine of ripeness concerns "whether judicial intervention occurs at the appropriate time." *Pa. Indep. Oil*, 135 A.3d at 1127.  With regard to administrative law, ripeness is intended to prevent the courts "from entangling themselves in

---

[6] The Board suggests throughout its brief that a change in Petitioners' "circumstances, the current state of the law, and evolving sentiment regarding whether previous criminal convictions should impair licensure may all favor Petitioners' positions if they were to present new applications to the Board." (Board's Br. at 11.)

9

abstract disagreements over administrative policies," and to avoid "judicial interference until an administrative decision has been formalized and its efforts felt in a concrete way by the challenging parties." *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 874 (Pa. 2010).

> In deciding whether the doctrine of ripeness bars our consideration of a declaratory judgment action, we consider "whether the issues are adequately developed for judicial review and what hardships the parties will suffer if review is delayed." . . . The factors we consider under our "adequately developed" inquiry include: whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the amount of fact finding required to resolve the issue; and whether the parties to the action are sufficiently adverse. . . . Under the "hardship" analysis, we may address the merits even if the case is not as fully developed as we would like, if refusal to do so would place a demonstrable hardship on the party.

*Philips Bros. Elec. Contractors, Inc. v. Pa. Tpk. Comm'n*, 960 A.2d 941, 945-46 (Pa. Cmwlth. 2008) (quoting *Twp. of Derry v. Pa. Dep't of Labor & Indus.*, 932 A.2d 56, 57-58 (Pa. 2007)). The conflict between the parties does not need to be a "full-fledged battle," but exists where the parties' differences regarding their legal rights "have reached the state of antagonistic claims, which are being actively pressed on one side and opposed on the other." *Pa. Indep. Oil*, 135 A.3d at 1128 (quoting *Lakeland Joint Sch. Dist. Auth. v. Sch. Dist. of Twp. of Scott*, 200 A.2d 748, 751 (Pa. 1964)).

In *Pennsylvania Independent Oil*, this Court concluded that a petition for review challenging the Department of Environmental Protection's (DEP) authority to impose requirements for a permitting process was adequately developed and ripe for determination. *Id.* Specifically, the association challenged DEP's authority to impose certain permitting requirements in light of *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013), where the Pennsylvania Supreme Court

10

enjoined DEP's enforcement of certain statutory provisions. DEP argued the claim was not ripe because the association averred general allegations, raising questions regarding how DEP interpreted and applied the relevant statutory provisions to each of the association's members. DEP contended that the factual issues first had to be developed before the Environmental Hearing Board.

We disagreed, reasoning that the lack of factual record did not preclude ripeness because the association was not challenging DEP's application of the requirements to any **one** of its members, but rather, DEP's ability to apply the requirements to **any** of the association's members. The association challenged the permitting requirements industry-wide, not the denial of any particular application. Because the association's concerns regarding DEP's process were "unavoidable," this Court explained, "the ripening seeds of a controversy appear." *Pa. Indep. Oil*, 135 A.3d at 1128 (internal quotation omitted). Further, declaratory judgment actions are intended "to eliminate the substantial expense and uncertainty" that comes with piecemeal litigation, we noted, and the declaratory relief the association sought would practically help to end the dispute. *Id.* Therefore, we determined that the issue in the association's petition was adequately developed for "ascertaining whether declaratory relief [was] warranted." *Id.*

The issue presented in Petitioners' Petition is similar to that in *Pennsylvania Independent Oil*. Petitioners do not challenge the denial of **their** licensure applications but assert a broader challenge to the constitutionality of one of the statutory requirements for licensure. Petitioners' constitutional challenge is a facial challenge that is adequately developed for review. First, the claims do not involve uncertain and contingent events, as Petitioners have applied for licensure and were denied for poor moral character. Further, they have averred in the Petition that the

11

Board issued final denials to other applicants over the three years preceding 2018 based on the good moral character statutory requirement. (Petition ¶¶ 75-76.) This supports the argument that the Board is applying the statutory requirement that Petitioners allege is unconstitutional. As such, the constitutional questions regarding the Board's application of this requirement for licensure have become "unavoidable," such that the "ripening seeds of a controversy appear[ed]." *Pa. Indep. Oil*, 135 A.3d at 1128.

Further, there is no need for further factual development because, as set forth on the face of the Petition, Petitioners challenge the constitutionality of the good moral character requirement **on its face**. As with the industry association in *Pennsylvania Independent Oil*, Petitioners' challenge here is to the Board's authority to apply the good moral character requirement to **any** application for a limited cosmetology license. It is not a belated challenge to the Board's denial of Petitioners' prior applications for licensure. The Board argues that Petitioners cannot establish harm because they do not currently have applications pending before the Board, but this overlooks the relief Petitioners seek, which is a declaration that this requirement is unconstitutional and a prohibition against the Board from using the requirement when reviewing applications in the future. We recognize that Petitioners did not appeal the determinations in which the Board denied them licenses and aver that they will not reapply for licensure while the good moral character requirement remains. However, Petitioners do not seek relief related to their individual license denials, such as a request that the Court direct the Board to grant them a license. Rather, they seek to be able to apply for a license to work in their chosen profession at some point in the future without being subject to a requirement they believe is unconstitutional. Moreover, as discussed further below,

12

because Petitioners do not challenge their license denials in the Petition, their decision not to appeal those administrative decisions does not preclude their present claims by reasons of ripeness or the other objections raised by the Board.

Moreover, because declaratory judgment actions are intended to "eliminate the substantial expense and uncertainty that results from . . . piecemeal litigation," *id.*, the declaratory judgment that Petitioners seek will "practically help to end the controversy" between the parties. *Id.* Petitioners and the Board take opposing positions as to the constitutionality of the good moral character requirement, and Petitioners aver that it is the good moral character requirement that precludes them from reapplying for licensure. (Petition ¶ 117.) Because of these opposing positions and the Board's application of that requirement, a controversy exists and the claims are ripe for review. Without resolution of the claims in Petitioners' Petition, Petitioners are unable to pursue their lawful professions as estheticians without expending time and money for new applications and submitting themselves to a licensure process that they aver is unconstitutional on its face. (*Id.* ¶¶ 110-21.) Requiring individuals to undergo an inquiry believed to be unconstitutional on its face as a prerequisite for the ability to challenge that unconstitutionality, as the Board's arguments appear to suggest, creates a hardship on those individuals.

Therefore, Petitioners will suffer a hardship if review is denied. Accordingly, because the issues are adequately developed and Petitioners will suffer hardship if review is denied, the claims are ripe and this PO is overruled.

### b. *Standing*

The Board argues that Petitioners seek relief for a future hypothetical situation and refuse to apply for new licenses until the good moral character requirement is

deemed unconstitutional. Because of this, the Board contends that Petitioners cannot establish that denial of their applications for licensure is imminent. Therefore, the Board asserts Petitioners cannot show a direct, immediate, and substantial interest in the litigation. The Board also argues that Petitioners' interest in the litigation is not distinct from the interest of the public at large. Petitioners' position that they have been harmed previously by application of the good moral character requirement and do not wish to be harmed again, the Board maintains, is not enough to establish immediate and substantial harm. As a result, the Board argues Petitioners lack standing.

Petitioners contend that they have standing for all the reasons supporting their position that the claim is ripe. Petitioners assert that they have a substantial, direct, and immediate interest "because they cannot practice their chosen occupation unless they undergo a burdensome, humiliating, and unconstitutional process," and but for the good moral character requirement, they would be granted licenses as they have met the other licensing requirements. (Petitioners' Br. at 17.)

In order to have standing, a petitioner must show that the petitioner is aggrieved. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005). A party is aggrieved where the party can establish

> that [the party] has a substantial, direct, and immediate interest in the outcome of the litigation. . . . An interest is "substantial" if it is an interest in the resolution of the challenge which "surpasses the common interest of all citizens in procuring obedience to the law." Likewise, a "direct" interest mandates a showing that the matter complained of "caused harm to the party's interest," . . . i.e., a causal connection between the harm and the violation of law. . . . Finally, an interest is "immediate" if the causal connection is not remote or speculative.

14

*Id.* (citations omitted). For declaratory judgment actions, a party's interest must be "substantial and present," as opposed to "remote or speculative," because "[d]eclaratory judgment is not appropriate to determine rights in anticipation of events which may never occur." *Chester Upland Sch. Dist. v. Commonwealth*, 495 A.2d 981, 983 (Pa. Cmwlth. 1985).

First, Petitioners' interests must be substantial. Because Petitioners are within the class of people to whom the challenged statutory requirement applies, their interest in the constitutionality of Section 5 of the Beauty Culture Law "surpasses the common interest of all citizens in procuring obedience to the Law." *Pittsburgh Palisades Park*, 888 A.2d at 660. They have taken the educational and experiential steps necessary to seek licensure in this field and but for this requirement, they contend that they would be able to obtain a license. Thus, their interests are substantial. Second, Petitioners' interests must be direct. Because Petitioners assert that it is the claimed unconstitutional requirement that is preventing their ability to obtain licensure and employment within their chosen profession, there is "a causal connection between the harm and the violation of law." *Id.* Thus, their interests are direct.

Third, we must consider whether Petitioners' interests are immediate for the purposes of a declaratory judgment action. As this Court determined in *Chester Upland School District*, there is no direct, substantial or **present** interest to confer standing on a petitioner when the petition for review in declaratory judgment does not contain averments that action by an agency **has been taken or** that action **is inevitable**. 495 A.2d at 983. Absent such allegations, no "actual controversy" is presented. *Id.* In *Chester Upland School District*, a school district filed a petition for review seeking declaratory judgment as to the constitutionality of amendments

15

to the Public School Code of 1949[7] prohibiting certain school districts from requiring its employees to reside in the district as a precondition to employment. The Commonwealth filed preliminary objections asserting, *inter alia*, that there was no case or controversy to confer standing. This Court agreed, reasoning that the Commonwealth **had not taken action to enforce the amendments or that it was inevitable that it would**. Thus, there was no showing that it was "imminent or inevitable" that the Commonwealth would take action and, therefore, the school district did not have standing. *Id.*

The Court determined the case was similar to our decision in *South Whitehall Township v. Department of Transportation*, 475 A.2d 166 (Pa. Cmwlth. 1984), wherein a township sought declaratory relief to invalidate regulations promulgated by the Department of Transportation (DOT). We sustained DOT's preliminary objections on the basis of standing, noting that "[t]he crux of the [township]'s claim . . . is that *if* **it acts** on behalf of developers," the regulatory provisions at issue would impose liability on the township contrary to public policy and law. *Id.* at 169 (emphasis added). This, the Court explained, was not the same as averring that the township had in fact acted such that "the indemnity regulation [was] brought into play." *Id.* Because the township had not averred that it had, or even sought to obtain, a permit on behalf of a private developer, this Court concluded that "[t]he events which might bring these parties into actual conflict are thus too remote to justify our resolution of this dispute by declaratory judgment." *Id.*

Unlike the petitioners in *Chester Upland School District* and *South Whitehall Township*, which did not aver actual action or inevitable action by the relevant agency, Petitioners here do aver facts reflecting that "[t]he events which might bring

---

[7] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101–27-2702.

16

the parties into actual conflict" are not "remote." *South Whitehall Twp.*, 475 A.2d at 169. Rather, per the Petition's allegations, which we accept as true at this stage of the proceedings, the Board **has acted** and **has applied or enforced** the good moral character requirement set forth in Section 5 of the Beauty Culture Law. As averred in the Petition, the Board applied it to Petitioners' applications, as well as to the applications of others who were denied licenses due to the Board's enforcement of this statutory provision. Petitioners claim this requirement is unconstitutional on its face and, therefore, there is an actual conflict or controversy that is imminent and inevitable. Accordingly, their interests, as individuals to whom this provision is applicable, and their challenge to this provision as being unconstitutional, cannot be said to be speculative because "[t]he events which might bring these parties into actual conflict" have actually occurred. *South Whitehall Twp.*, 475 A.2d at 169.

Because Petitioners have a substantial, direct, and immediate interest and have suffered harm, Petitioners have standing for the present action and this PO is overruled.

### c. Failure to Exhaust Remedies, Res Judicata, and Collateral Estoppel

The Board argues that Petitioners' claims are barred by res judicata because Petitioners seek to relitigate issues that they did not raise before the Board during their application processes. The Board further argues that the claims in the Petition are barred by collateral estoppel as they (1) are the same issues that were present before the Board during the application process, and (2) were the basis for the final license denials. Additionally, Petitioners now raise these claims against the same party, the Board, against which they had a full and fair opportunity to litigate their claims regarding the good moral character requirement during the administrative

17

licensure process. Moreover, the Board contends that Petitioners did not exhaust their statutory remedies for these claims, as Haveman did not challenge the provisional denial or appeal the final denial and Spillane did not appeal the final Order denying her license after the hearing. The Board contends that if Petitioners "avail[ed] themselves of the reapplication process, they could . . . either prevail before the Board or, if denied, litigate the matter through the appropriate appeals." (Board's Br. at 18.) Because they have not, the Board maintains Petitioners' claims are barred by res judicata and collateral estoppel.

Petitioners respond that the Board's three preliminary objections here do not succeed because the Board does not have jurisdiction over claims challenging the facial constitutionality of a law. Therefore, Petitioners were not required to exhaust administrative remedies. Similarly, Petitioners assert that their claims are not barred by res judicata because the Board would not have been able to decide these constitutional challenges had Petitioners raised them during the application process. The claims are also not barred by collateral estoppel, as the claims for relief are not related to the Board's determination that Petitioners lack good moral character but whether that requirement is even constitutional. Accordingly, Petitioners contend that collateral estoppel does not apply.

Exhaustion of administrative remedies is related to the doctrine of ripeness and requires parties to proceed through all adequate and available administrative channels before seeking judicial remedies. *Bayada Nurses, Inc.*, 8 A.3d at 875. The requirement of exhaustion of administrative remedies "ensure[s] that agency decision making is not unduly disrupted." *Id.* In declaratory judgment actions, the exhaustion requirement makes certain that equitable relief "'cannot be granted to a party [that] has an adequate remedy at law' but has not exhausted that remedy." *E.*

18

*Coast Vapor, LLC v. Pa. Dep't of Revenue*, 189 A.3d 504, 510 (Pa. Cmwlth. 2018). There is an **exception to the exhaustion requirement** where a party challenges the **validity of a statute**, as opposed to challenging the application of that statute to the particular party. *Id.* at 511. Because "[a]n administrative agency cannot find its enabling legislation to be unconstitutional," an agency cannot provide an adequate remedy to a facial challenge to the constitutionality of a statute. *Id.*

In *East Coast Vapor*, for example, the petitioners raised a facial challenge to the constitutionality of certain definitional and tax provisions of the Tobacco Products Tax Act[8] and sought declaratory relief. The Department of Revenue asserted that the petitioners had not exhausted administrative remedies because the basis for the petitioners' aggrievement, the unlawful collection of taxes, should have been challenged before the Board of Finance and Revenue. This Court disagreed, explaining that petitioners' challenge to the statute was facial and based on the statutory text alone rather than the facts of a particular case. *Id.* at 511-12. There was no need for additional fact finding in order to resolve the claim, this Court reasoned, as the petitioners' challenge was a "direct attack" on the "express provisions" of the statute. *Id.* at 512.

Here, as in *East Coast Vapor*, Petitioners are raising a facial challenge to the good moral character requirement in Section 5. Although the initial harm Petitioners experienced was the denial of their applications for licensure, they do not challenge denial. Rather, Petitioners assert a constitutional challenge to the statutory good moral character requirement on its face. Had Petitioners raised the issue of the constitutionality of the good moral character requirement before the Board during the licensure application process, the Board would have been unable to provide,

---

[8] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 8201-A–8234-A.

19

through the administrative appeals process, the relief that Petitioners now seek: a declaration that the good moral character requirement violates the Constitution. Thus, even though the Board suggests that Petitioners should simply reapply and that the "evolving sentiment regarding" prior criminal convictions and licensure, "**may** . . . **favor**" Petitioners' positions, (Board's Br. at 11 (emphasis added)), this position disregards the declaratory relief requested. Further, should Petitioners take such actions and the Board grant Petitioners licenses, Petitioners would be unable to present their constitutional arguments to the Court, as they would not be aggrieved. For these reasons, Petitioners were not required to exhaust administrative remedies.

Because Petitioners seek declaratory relief related to the statutory requirement on its face, not an administrative appeal of the licensure denials and corresponding grant of the prior application, and they could not have received the relief they seek at the administrative level, res judicata and collateral estoppel similarly do not apply. Res judicata, or claim preclusion, "bars a subsequent action between the same parties on any claim that was the subject of an earlier adjudication on the merits." *Doheny v. Dep't of Transp., Bureau of Driver Licensing*, 171 A.3d 930, 935 n.11 (Pa. Cmwlth. 2017).

> Res judicata . . . applies only when there exists a coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued.

*Robinson v. Frye*, 192 A.3d 1225, 1231 (Pa. Cmwlth. 2018) (internal quotations omitted). Res judicata also bars those claims that the parties **could** have litigated if they were part of the same action. *Id.*

Collateral estoppel, or issue preclusion, prevents issues of fact or law from relitigation in a new suit where, in a prior suit, (1) the same issues were (2) necessary

20

for a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Id.* at 1232. The issues of law or fact from the prior action "must be identical to the one presented in the later action" in order for res judicata or collateral estoppel to apply. *Blair v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, 72 A.3d 742, 754-55 (Pa. Cmwlth. 2013).

While Petitioners both had applications before the Board previously, the Petition does not raise the same issues that were before the Board nor issues that Petitioners **could have raised** before the Board. Petitioners do not seek retrospective relief with regard to the denial of their applications for licensure, i.e., that they be granted a license. Before the Board, Petitioners sought licensure. Before this Court, Petitioners seek declaratory and injunctive relief as to the averred unconstitutionality of the good moral character requirement. The identity of the things sued for and the causes of action are not the same. Moreover, the Board was unable to provide a remedy for the facial constitutional challenge Petitioners now raise while Petitioners' applications were under consideration and would not be able to declare the requirement unconstitutional now even if Petitioners currently reapplied, as the Board contends that they should. Further, although the Board could change its interpretation or application of the good moral character requirement, as its arguments appear to suggest, (*see* Board's Br. at 11), this would not alter the existence of the language in the Beauty Culture Law that Petitioners allege to be unconstitutional.

Accordingly, exhaustion, res judicata, and collateral estoppel do not apply to the claims in Petitioners' Petition, and these POs are overruled.

21

*d. Untimeliness*

The Board argues that the Petition is untimely, as it is an appeal of the Board's orders denying the licenses filed more than 30 days after the denials were issued. In the Board's view, Petitioners now assert that the good moral character requirement is unconstitutional rather than timely appealing the adjudications of which they complain. Therefore, the Petition should be dismissed.

Petitioners respond that they do not seek to challenge their initial license denials, as explicitly detailed in the Petition. Petitioners assert that they are not seeking to establish through their requested relief that they had good moral character when they applied for licenses or even that they have good character now; they challenge only the constitutionality of the good moral character requirement. As a result, Petitioners argue that the Petition is not a veiled appeal of their license denials but is intended only to remove an unconstitutional requirement from the licensure process. This Court has not considered petitioners, in our original jurisdiction, to be pursuing de facto appeals of administrative proceedings unless the issues are identical, Petitioners assert, which is not the case here.

Parties seeking review of a Board's order issuing a denial must appeal to this Court within 30 days of the final order. Section 702 of the Administrative Agency Law, 2 Pa. C.S. § 702; Pennsylvania Rule of Appellate Procedure 1512(a)(1), Pa.R.A.P. 1512(a)(1). Petitioners aver in the Petition that they "are **not** challenging their initial license denials or seeking damages based on those denials. They are seeking relief only prospectively, based on the unconstitutional burden the good [moral] character requirement is imposing on them now." (Petition ¶ 122 (emphasis added).) On the face of the Petition, it is evident that Petitioners are not seeking review of the Board's final denials of their license applications in this action seeking

22

declaratory and injunctive relief. Thus, this is not an untimely appeal from the Board's orders, and this PO is overruled.

### e. *Statute of Limitations*

The Board argues that Petitioners' claims are barred by the two-year statute of limitations set forth in Section 5524(2) and (7) of the Judicial Code, 42 Pa. C.S. § 5524(2), (7), for actions asserting violations of the Pennsylvania Constitution. (Board's Br. at 20 (citing *Metzger v. Pike Cty.* (Pa. Cmwlth., No. 432 C.D. 2012, filed Dec. 13, 2012); *Storch v. Miller*, 585 A.2d 1173 (Pa. Cmwlth. 1991)).) According to the Board, the Board's actions forming the basis for Petitioners' Petition occurred in 2015 and 2016, meaning the two-year statute of limitations bars the present action. Accordingly, the Board asks us to dismiss the Petition.

Petitioners respond that the plain text of the subsections of Section 5524 upon which the Board relies are clear that they apply only to tort damages. Petitioners, however, seek "prospective remedies against an unconstitutional statute," not damages. (Petitioners' Br. at 24.) Petitioners disagree with the authority relied upon by the Board, arguing that it is unclear that Section 5524 applies to constitutional claims at all. Petitioners suggest that no statute of limitations applies and because Petitioners are facing an injury today based on an unconstitutional requirement, they should be able to institute suit now.

Subsections (2) and (7) of Section 5524 provide that the following actions be commenced within two years:

> (2) [a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
>
> . . . .

23

(7) [a]ny other action or proceedings to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa. C.S. § 5524(2), (7). Petitioners do not seek damages for injury to person or property or even damages for a constitutional violation. Petitioners seek declaratory and injunctive relief on the question of the facial constitutionality of a statutory provision. Therefore, the two-year statute of limitations in Section 5524 does not apply, and this PO is overruled.

## IV. Conclusion

Petitioners' claims are adequately developed, and Petitioners allege they will suffer hardship if judicial review of these claims is denied; thus, the claims are ripe for consideration. Petitioners also have standing to bring this declaratory judgment because they have a substantial, direct, and immediate interest in pursuing the current Petition challenging the constitutionality of the good moral character requirement in Section 5 of the Beauty Culture Law. Because Petitioners seek declaratory and injunctive relief on a facial constitutional challenge and are not appealing the Board's denial of their license applications, the claims are not barred by a failure to exhaust administrative remedies, collateral estoppel, or res judicata and the Petition is not untimely. Finally, Petitioners seek declaratory relief and not damages; thus, their claims are not barred by the two-year statute of limitations.

Accordingly, we overrule the POs and direct the Board to file an Answer to the Petition.

                                  _____

                                  **RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Haveman and            :
Amanda Spillane,                 :
               Petitioners     :
                              :
            v.                 :   No. 765 M.D. 2018
                              :
Bureau of Professional and      :
Occupational Affairs, State Board of   :
Cosmetology of the Commonwealth    :
of Pennsylvania,               :
              Respondent    :

## **O R D E R**

**NOW**, December 9, 2019, the Preliminary Objections of the Bureau of Professional and Occupational Affairs, State Board of Cosmetology of the Commonwealth of Pennsylvania (Board) are **OVERRULED**. The Board is directed to file an answer within thirty (30) days of the date of this Order.

The Board's November 14, 2019 Application in the Nature of a Motion for Protective Order/Motion for Stay is **DENIED**.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Haveman and Amanda Spillane,    :
                       Petitioners    :
                                     :
               v.                    :      No. 765 M.D. 2018
                                     :      ARGUED: September 9, 2019
Bureau of Professional and Occupational    :
Affairs, State Board of Cosmetology of the   :
Commonwealth of Pennsylvania,             :
                       Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**DISSENTING OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED: December 9, 2019**


I must respectfully dissent because I believe this action is barred by the doctrine of claim preclusion. Neither *East Coast Vapor, LLC v. Pennsylvania Department of Revenue*, 189 A.3d 504 (Pa. Cmwlth. 2018), upon which the majority relies, nor *Parsowith v. Department of Revenue,* 723 A.2d 659 (Pa. 1999), upon which *East Coast Vapor* relies, involve that doctrine. While it is true that a facial challenge to the constitutionality of a statute cannot be addressed by an administrative agency, it can be addressed on an appeal to a court from an agency's adjudication. Because a constitutional claim can be raised in such a fashion, I do not believe that the law or sound policy permits piecemeal litigation of claims that would otherwise be subject to the preclusion doctrine.

                                    _____
                                    **BONNIE BRIGANCE LEADBETTER,**
                                    Senior Judge