IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C B M Ministries of South Central : 
Pennsylvania, Inc., : 
                Petitioner : 
 : 
    v. :   No. 206 M.D. 2018
 : 
Commonwealth of Pennsylvania, : 
Department of Transportation; and : 
Commonwealth of Pennsylvania, : 
Pennsylvania State Police; and : 
Leslie S. Richards, in her official : 
capacity as Secretary of the : 
Pennsylvania Department of : 
Transportation and Colonel Tyree : 
C. Blocker, in his Official capacity : 
as acting commissioner of the : 
Pennsylvania State Police, : 
              Respondents :   Argued:  September 13, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                  FILED:  December 18, 2023

Before this Court, in our original jurisdiction, are a Motion for Summary Judgment filed by C B M Ministries of South Central Pennsylvania, Inc. (CBM) and an Application for Summary Relief filed by the Commonwealth of Pennsylvania, Department of Transportation, the Pennsylvania State Police (PSP), Leslie S. Richards, in her official capacity as Secretary of Transportation of the Department

of Transportation, and Colonel Tyree C. Blocker, in his official capacity as Acting Commissioner of the PSP (collectively, DOT).[1]

The central issue in this case is whether privately owned vehicles used by a religious organization to transport children from public schools to off-site locations for religious instruction during the school day are subject to DOT's heightened regulation of school buses. For the reasons that follow, we conclude that they are not. Therefore, we grant CBM's Motion for Summary Judgment and deny DOT's Application for Summary Relief.

## I. **Background**

"Released time" is a widely recognized program, established by individual state laws, in which public school students are voluntarily released from school to receive religious education during the school day, with parental approval. Released time recognizes the constitutionally protected right of parents to direct the religious education of their children. *See generally Zorach v. Clauson*, 343 U.S. 306 (1952).

Pennsylvania's released time statute is codified at Section 1546 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 15-1546 (released time statute). The released time statute provides:

> *The superintendent of the school district shall, upon the written request of a parent or other person in loco parentis, excuse any student who is the child of that parent or person in loco parentis from school attendance for a total of not more than thirty-six (36) hours per school year in order to attend classes for religious instruction*: Provided, however, That the request shall identify and describe the instruction, and the dates and hours for which the absence is requested and that the parent or person in loco parentis shall, following each such absence, furnish in writing to the superintendent of the school district a statement

---

[1] We use "DOT" in this Opinion to refer to both the Department of Transportation individually and to Respondents collectively, unless otherwise noted.

2

> attesting that the child did in fact attend the instruction and the dates and hours upon which such attendance took place.

24 P.S. § 15-1546 (emphasis added); *see also* 22 Pa. Code § 11.21(b) ("Upon written parental request, *a student shall be excused from school to attend classes for religious instruction under* [*the released time statute*].") (emphasis added).

CBM, which does business as "Joy El Ministries," is a nonprofit religious organization that operates 87 released time programs in 8 counties in Pennsylvania. CBM Evid. Materials in Support of Summ. J. at 5, 7.[2]  CBM has provided released time transportation to public school students since 1967 and presently serves 3,100 students in third through sixth grades. *Id.* at 6-7, 189.

CBM uses vehicles that it owns to transport students from their schools to nearby churches for the released time program and then returns the students to their schools. *Id.* at 4-6.  CBM has no contractual relationship with any school or school district whose students participate in its programming. *Id.* at 10.

CBM currently owns and operates a fleet of 14 buses, which were donated to CBM by various churches and contractors. *Id.* at 10, 16.  CBM's vehicles undergo regular state inspections, and each vehicle is marked with a valid state inspection sticker. *Id.* at 14.  The vehicles are driven primarily by volunteers, each of whom possesses a commercial driver's license and a "P" endorsement, authorizing passenger transport. *Id.* at 15.

---

[2] Two of CBM's released time programs are operated outside of Pennsylvania – one in Maryland and the other in West Virginia.  CBM Evid. Materials in Support of Summ. J. at 7, 11-12.

On September 23, 2015, PSP cited CBM for failing to comply with DOT's school bus regulations.[3]  In a prior Memorandum Opinion in this case, this Court described what transpired as follows:

> On September 23, 2015, a CBM bus was the subject of a traffic stop in a church parking lot while it transported release[d] time participants.  During the traffic stop, the PSP officer performed an impromptu inspection of the bus.  Upon inspection, the PSP officer determined that the bus failed to comply with [DOT's] regulations applicable to school buses.  After the inspection, the PSP officer refused to permit the students to board the bus, and CBM arranged with a private contractor to borrow a bus in order to return the children to school.
>
> Thereafter, PSP contacted three school districts and informed them that CBM's vehicles did not comply with applicable regulations.  As a result, those school districts no longer permitted their students to utilize CBM's transportation services to attend release[d] time programs.

*CBM Ministries of S. Cent. Pa., Inc. v. Dep't of Transp.* (Pa. Cmwlth., No. 206 M.D. 2018, filed Jan. 9, 2019), slip op. at 3 (internal footnote and citations omitted).

CBM originally filed this action in the Franklin County Court of Common Pleas (Common Pleas) in October 2015, and DOT removed the case to federal district court.  After a preliminary injunction hearing, the federal district court enjoined DOT's enforcement of the school bus regulations against CBM pending the outcome of this suit, finding that CBM had a high likelihood of success on the merits.  Following discovery, the federal district court granted partial summary

---

[3] PSP cited CBM for, *inter alia*, identifying CBM as the owner of the bus on externally visible decals; failing to paint the bus "National School Bus Yellow"; and failing to mark the vehicle with the words "school bus."  CBM Evid. Materials in Support of Summ. J. at 163, 290.

4

judgment in DOT's favor on CBM's 42 U.S.C. § 1983 claim and remanded the matter to Common Pleas to consider CBM's state law claims.

Following remand, CBM filed an Amended Complaint in Common Pleas, alleging that it is not required to comply with DOT's school bus regulations and that requiring it to do so burdens its free exercise of religion. By agreement of the parties, Common Pleas transferred the case to this Court for disposition in March 2018.

DOT then filed Preliminary Objections to CBM's Amended Complaint with this Court, challenging the legal sufficiency of CBM's claims under the Religious Freedom Protection Act (RFPA), Act of December 9, 2002, P.L. 1701, 71 P.S. §§ 2401-2407.[4] On January 9, 2019, this Court overruled DOT's Preliminary Objections without prejudice so "as to provide [DOT] an opportunity to again raise these arguments in a motion for summary judgment once discovery is complete." *CBM Ministries*, slip op. at 9.

After the completion of discovery, on December 20, 2021, CBM filed its Motion for Summary Judgment with this Court. On January 26, 2022, DOT filed its Application for Summary Relief. The parties have filed briefs in support of their respective motions and presented argument before the Court *en banc* on September 13, 2023.[5]

---

[4] "The RFPA prohibits the Commonwealth from imposing substantial burdens on the free exercise of religion without a compelling interest and a showing that the least restrictive means have been employed to satisfy that interest." *CBM Ministries*, slip op. at 5 n.3; *see* Section 4 of the RFPA, 71 P.S. § 2404.

[5] Pennsylvania Rule of Appellate Procedure 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "An application for summary relief is properly evaluated according to the standards for summary judgment." *Myers v. Com.*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). In ruling on a motion for summary relief, we must view the evidence in the light most favorable to the non-moving party **(Footnote continued on next page…)**

## II. Analysis

Before this Court, CBM asserts that its vehicles are not subject to DOT's school bus regulations because they are not owned by or under contract with a school as required by DOT's enabling statute, codified at Section 4551(a) of the Vehicle Code, 75 Pa. C.S. § 4551(a) (enabling statute). CBM Br. in Support of Summ. J. at 5. DOT asserts, on the other hand, that CBM is advocating "a narrow, hyper-technical reading" of the enabling statute and that the statute must be read in the context of DOT's regulations governing school buses "as a whole." DOT Br. in Support of Summ. Relief at 1. In particular, DOT contends that CBM is itself a "school" and its vehicles are "multi-function school activity buses" that transport school children; thus, DOT asserts that CBM's vehicles must comply with DOT's school bus regulations. *Id.* at 1-2, 4-5; DOT Appl. for Summ. Relief ¶¶ 3-4.

DOT's enabling statute provides:

> *All school buses and all other vehicles used in the transportation of school children, owned by or under contract with any school district or parochial or private school, shall conform to standards prescribed by [DOT].* Regulations shall be promulgated by [DOT] governing the safe design, construction, equipment and operation of vehicles engaged in the transportation of school children.

75 Pa. C.S. § 4551(a) (emphasis added).

By its plain language, the enabling statute applies *only* to school buses and vehicles "*owned by or under contract with* any school district or parochial or private school." *Id.* (emphasis added). Given the limited authority granted to DOT by the

---

and may enter judgment only if: (1) there are no genuine issues of material fact; and (2) the right to relief is clear as a matter of law. *Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 1 A.3d 988, 990 n.1 (Pa. Cmwlth. 2010). "The record, for purposes of [a] motion for summary relief, is the same as [the] record for purposes of a motion for summary judgment." *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 195 (Pa. Cmwlth. 2015).

enabling statute, CBM asserts that DOT's school bus regulations do not apply to privately owned vehicles that are *not* contracted with a school district.

Acknowledging this clear statutory language, DOT asserts that CBM is itself a "school," and, as such, its vehicles are subject to DOT's school bus regulations pursuant to the enabling statute. *See* DOT Appl. for Summ. Relief ¶¶ 3-4. Specifically, DOT's regulation at 67 Pa. Code § 171.2 defines "school" as "[*a*]*n institution for the education and training of children, including but not limited* to kindergartens, rehabilitation centers, day care centers, Head Start centers, group day care homes, family day care homes, and summer camps." DOT asserts that CBM uses its vehicles to transport students to and from offsite locations for religious educational instruction, thereby qualifying it as a school. Thus, DOT contends that because CBM is a school, its vehicles are "owned by . . . [a] school," 75 Pa. C.S. § 4551(a), and are subject to DOT's school bus regulations. We disagree.

While the list of examples in the regulation's definition of "school" is not exhaustive, noticeably absent from that list is any form of private religious instruction. CBM's released time program is not akin to a kindergarten, day care center, group home, Head Start center, or traditional summer camp, due to its wholly religious aim. The record establishes that the primary purpose of CBM's released time program is to teach Bible ministry to school children, and the released time classes are taught at nearby churches. *See* CBM Evid. Materials in Support of Summ. J. at 6, 8.[6] Indeed, the United States Supreme Court has held that released

---

[6] As CBM explains in its brief:

> The gospel mission involves both conduct and expression mandated by [CBM's] religious beliefs. Expressing adherence to this faith and sharing with others is fundamental to [CBM's] religious ministry. As the ministry describes it, "At Joy El Ministries, we want people to know that God showed us how much He loved us

**(Footnote continued on next page…)**

time programs, in general, are constitutionally permissible under the Establishment Clause of the First Amendment of the United States Constitution[7] precisely because the children are *released from school custody* to attend religious classes. *See Zorach*, 343 U.S. at 314-15 (upholding the State of New York's released time program as constitutional, as long as religious instruction occurs off public school grounds, with parental permission, and without any public funding).[8] As CBM points out, unless

---

by sending His Son, Jesus Christ, to earth to die for our sins. And because Jesus paid the price for our sins, we now have the opportunity to have our sins forgiven and to live a victorious, peace-filled life." *The ministry carries this out in part through its release*[*d*] *time ministry to public school students*, part of the Children's Bible Mission . . . project started decades ago.

CBM Br. in Support of Summ. J. at 14 (footnote omitted) (emphasis added); *see also* CBM Evid. Materials in Support of Summ. J. at 203 (CBM's Executive Director testified that, through its religious programming, CBM's "goal is to always help children interact with the Bible in everything that we do").

[7] The Establishment Clause provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[] . . . ." U.S. Const. amend. I; *see ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1481 (3d Cir. 1996) ("The First Amendment is a shield that prohibits the state from interfering with a person's right to worship as he or she pleases. It is not a sword that can be used to compel others to join in a religious observance at a state[-]sponsored event.").

[8] The *Zorach* Court explained:

Th[e] 'released time' program [in the State of New York] involves neither religious instruction in public school classrooms nor the expenditure of public funds. All costs[] . . . are paid by the religious organizations. The case is therefore unlike *McCollum v. Board of Education*, 333 U.S. 203[ (1948)], which involved a 'released time' program from Illinois. In [*McCollum*,] the [public school] classrooms were turned over to religious instructors. We accordingly held that the program violated the First Amendment [of the United States Constitution,] which (by reason of the Fourteenth Amendment[ of the United States Constitution]) prohibits the states from establishing religion or prohibiting its free exercise.

*Zorach*, 343 U.S. at 308-09 (footnotes omitted).

every church and synagogue in Pennsylvania that offers religious classes to children is now a "school," then CBM's religious programming cannot be deemed a "school."[9]

It is for this reason that we also reject DOT's assertion that CBM's vehicles are multi-function school activity buses subject to DOT regulation. A "multi-function school activity bus" is defined as "[a] *school bus* used to transport students on field trips, athletic trips or *other curricular or extracurricular activities*, but not used for to-and-from school transportation." 67 Pa. Code § 171.2 (emphasis added). "School bus," in turn, is defined as "[a] motor vehicle designed to carry 11 passengers or more, including the driver, and used for the transportation of preprimary, primary or secondary school students to or from public, private or parochial schools *or events related to these schools or school-related activities*." *Id.* (emphasis added). It is evident from the language of these provisions, when read together, that the phrase "school activity" in "multi-function school activity bus" means *school-sponsored or school-related activities*. As explained above, CBM's released time program cannot lawfully be considered a school-related curricular or extracurricular activity under the Establishment Clause. In order to pass constitutional muster, a released time program must maintain a completely separate identity and existence from the public schools the children attend. *See Zorach*, 343

---

[9] Even parochial schools, which are referenced in the enabling statute, do not have an exclusively religious aim. While parochial schools provide some religious instruction to school students, they also provide the compulsory education required by Pennsylvania law, unlike CBM's programming.

U.S. at 314-15. Therefore, we conclude that CBM is not a "school" and its vehicles are not "multi-function school activity buses" under DOT's regulations.[10]

Furthermore, CBM asserts, and we agree, that its vehicles do not transport "school children" as required by the enabling statute. Although DOT's regulations do not define "school children," CBM points out that Pennsylvania statutes typically use the terms "school children," "students," and "pupils" when referring to minors who are attending school at a given moment, but use the terms "child" or "minor" when they are not. *See, e.g.*, Section 1327 of the School Code, 24 P.S. § 13-1327 (requiring "every child of compulsory school age" to "enroll as a . . . student"); Section 1318 of the School Code, 24 P.S. § 13-1318 (stating that a "pupil" is suspended, but once suspended or expelled, the individual is referred to as a "child"); Section 1361 of the School Code, 24 P.S. § 13-1361 (regarding the provision of transportation to "pupils").

In fact, a close reading of the released time statute, which appears in the School Code, demonstrates this important distinction. The released time statute provides that the "superintendent of the school district . . . shall excuse any *student* who is the *child* of [a] parent" who wishes for the child "to attend classes for religious instruction," and that the parent must certify and "attest[] that *the child* did in fact attend" the released time program. *Id.* § 15-1546 (emphasis added). In other words, the children are "students" while in school custody, but are "children" under their parents' custody while attending the released time program outside of school.

---

[10] CBM also points out that unlike traditional school buses, which pick up and discharge children along the roadways, CBM picks up and drops off children only in parking lots where there is no (or little) vehicular traffic. Consequently, the heightened safety concerns addressed by DOT's school bus regulations are not implicated in this case. *See, e.g.*, 75 Pa. C.S. § 4553(c) (stating that DOT's regulations "shall not require vehicles which pick up and discharge school children only at locations off the highway to be of any particular color or to display flashing red and amber lights").

That is presumably why, under the released time statute, parents are responsible for certifying their children's attendance at the released time program, because they are responsible for their children when they are not in school.

We conclude that the plain language of the enabling statute conveys an unambiguous meaning: DOT may *only* regulate school buses and vehicles that are "owned by or under contract with any school district or parochial or private school." 75 Pa. C.S. § 4551(a). Here, the record establishes that CBM owns the vehicles it uses to transport public school children to and from the released time program and that CBM has no contractual relationship with any school or school district. Therefore, we conclude that CBM's vehicles are not subject to DOT's school bus regulations.[11]

### Conclusion

We conclude that CBM is not a "school" and its vehicles are not "multi-function school activity buses" as defined by DOT's regulations. We further conclude that CBM's vehicles are exempt from DOT's school bus regulations because they are neither owned by nor under contract with a public or private school, as required by DOT's enabling statute. While CBM does transport children to and from public schools for the released time program, DOT's regulations, by their plain language, do not apply to vehicles that are neither owned by nor contracted with a school. In other words, the text of the enabling statute expressly limits the reach of DOT's regulatory power in this area.

---

[11] CBM also asserts that requiring its drivers to comply with DOT's school bus regulations violates the RFPA because it would impose a significant financial burden on CBM and would discourage volunteers from serving as drivers, thereby burdening CBM's free exercise of religion. However, because we conclude that DOT's school bus regulations do not apply to CBM's vehicles, we need not reach this issue.

Because we conclude that there are no genuine issues of material fact in dispute and that CBM's right to relief is clear as a matter of law, we grant CBM's Motion for Summary Judgment and deny DOT's Application for Summary Relief.

_____
ELLEN CEISLER, Judge

Judges Dumas dissents and wishes to be so noted.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C B M Ministries of South Central : 
Pennsylvania, Inc., : 
                Petitioner : 
                : 
      v. :   No. 206 M.D. 2018
                : 
Commonwealth of Pennsylvania, : 
Department of Transportation; and : 
Commonwealth of Pennsylvania, : 
Pennsylvania State Police; and : 
Leslie S. Richards, in her official : 
capacity as Secretary of the : 
Pennsylvania Department of : 
Transportation and Colonel Tyree : 
C. Blocker, in his Official capacity : 
as acting commissioner of the : 
Pennsylvania State Police, : 
              Respondents : 

# **O R D E R**

AND NOW, this 18th day of December, 2023, we hereby GRANT the Motion for Summary Judgment filed by CBM Ministries of South Central Pennsylvania, Inc., and DENY the Application for Summary Relief filed by the Commonwealth of Pennsylvania, Department of Transportation, the Pennsylvania State Police, Leslie S. Richards, in her official capacity as Secretary of Transportation of the Department of Transportation, and Colonel Tyree C. Blocker, in his official capacity as Acting Commissioner of the Pennsylvania State Police.

                                  _____

                                  ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C B M Ministries of South Central    :
Pennsylvania, Inc.,    :
                      Petitioner    :
    :
            v.    :    No. 206 M.D. 2018
    :    Argued: September 13, 2023
Commonwealth of Pennsylvania,    :
Department of Transportation; and    :
Commonwealth of Pennsylvania,    :
Pennsylvania State Police; and    :
Leslie S. Richards, in her official    :
capacity as Secretary of the    :
Pennsylvania Department of    :
Transportation and Colonel Tyree C.    :
Blocker, in his Official capacity as    :
acting commissioner of the    :
Pennsylvania State Police,    :
                Respondents    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge

**OPINION NOT REPORTED**

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**        **FILED: December 18, 2023**

The issue in this case is whether the General Assembly has authorized the Pennsylvania Department of Transportation (PennDOT) to apply its school vehicle safety regulations to vehicles transporting school children, during the school day, from their public schools to off-site religious instruction and back to the public

schools. Because I believe the General Assembly has authorized PennDOT to do so, I must respectfully dissent from the Majority's conclusion to the contrary.

There are a few undisputed material facts relevant to the disposition of this case.[1] C B M Ministries of South Central Pennsylvania, Inc. (CBM) provides a released time program; released time, authorized by the General Assembly, provides "unique, religious **educational** opportunities available through private organizations." (CBM's Statement of Undisputed Facts (Undisputed Facts) ¶ 3 (emphasis added); *see also* Response to Undisputed Facts ¶ 3 (admitting same).) It includes "memorizing scripture and teaching biblical lessons through stories and messages based on a three-year curriculum." (*Id.* ¶ 4.)[2] This case arose when, as a CBM[3] vehicle was transporting school children back to their public school, the Pennsylvania State Police (PSP) stopped the vehicle, justifying the stop with alleged violations of PennDOT regulations found in Title 67, Chapter 171 of the Pennsylvania Code.[4] (Undisputed Facts ¶¶ 13-14; *see also* Response to Undisputed Facts ¶¶ 13-14 (admitting same).)

What is referred to as the released time statute, Section 1546 of the Public School Code,[5] allows CBM to provide its program to school children during the school day. It provides that "[t]he superintendent of the school district shall, upon

---

[1] Of course, I am mindful that here, sitting in our original jurisdiction, we may grant summary relief only where "a party's right to judgment is clear" with "no issues of material fact [] in dispute." *Myers v. Commonwealth*, 128 A.3d 846, 848 (Pa. Cmwlth. 2015) (citation omitted).

[2] Respondents admit "that the described activities constitute 'released time,'" but deny that the list of activities is "exhaustive." (Response to Undisputed Facts ¶ 4.)

[3] CBM does business as "Joy El Ministries." (Undisputed Facts ¶ 1.)

[4] Specifically, the PSP issued a warning to CBM for the presence of decals identifying it as the owner of the vehicles, failure to be painted "National School Bus Yellow," and failure to mark the vehicle with the words "School Bus." (Undisputed Facts ¶¶ 14(a)-(c)-15.) These regulations appear in 67 Pa. Code §§ 171.47 and 171.55.

[5] Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 15-1546.

RCJ - 2

written request of a parent or other person in loco parentis, excuse any student . . . from school attendance . . . in order to attend **classes** for religious **instruction**[.]" 24 P.S. § 15-1546 (emphasis added). Notably, to request released time, parents must, *inter alia,* "identify and describe **the instruction**" and upon completion "attest[] that the child did in fact attend the instruction." *Id.* (emphasis added).

It is helpful to begin the analysis in this case by zooming out on the broader legal landscape at issue. Under our system of democratic governance, it makes perfect sense that "**[o]nly** those powers **within the legislative grant**, either express or necessarily implied, can be exercised by [an] administrative body." *Pa. Hum. Rels. Comm'n v. St. Joe Minerals Corp., Zinc Smelting Div.*, 382 A.2d 731, 736 (Pa. 1978) (emphasis added). *See also E. Coast Vapor, LLC v. Pa. Dep't of Revenue*, 189 A.3d 504, 519 (Pa. Cmwlth. 2018) (declining to take up state agency's invitation to "add terms" to the statute it sought to enforce). The requirement that the General Assembly must specifically authorize the action taken by an administrative agency advances the essential democratic value of separation of powers. Our Supreme Court has explained that, with respect to separation of powers,

> when the General Assembly empowers some other branch or body to act, our jurisprudence requires that the basic policy choices involved in legislative power actually be made by the [l]egislature as constitutionally mandated. . . . This constraint serves two purposes. First, it ensures that duly authorized and politically responsible officials make all of the necessary policy decisions, as is their mandate per the electorate. . . . And second, it seeks to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power.

*Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1047 (Pa. 2019) (quoting *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 833 (Pa. 2017)) (internal citations and quotation marks omitted). In sum, when

the legislative branch instructs the executive branch to wield power, the judicial branch must look to the plain text of that statute to make sure that executive exercise of power is lawful. But we must also remain wary of usurping the legislature's proper policy-making authority by reading that grant of power too narrowly.

Those principles in mind, the Majority wisely and correctly turns first to the enabling statute, Section 4551(a) of the Vehicle Code, 75 Pa.C.S. § 4551.[6] *C B M Ministries of S. Cent. Pa., Inc. v. Dep't of Transp.* (Pa. Cmwlth., No. 206 M.D. 2018, filed Dec. 18, 2023), slip op. at 6. That statute provides in relevant part, that "[a]ll school buses and all other vehicles used in the transportation of school children, owned by or under contract with any school district or parochial or private school, shall conform to standards prescribed by [PennDOT]." 75 Pa.C.S. § 4551(a).

Crucial to determining whether CBM is covered by PennDOT's regulations is interpreting what the General Assembly intended to cover with the language of the enabling statute. Like our interpretation of any other statute, we must turn to our familiar statutory construction principles to determine whether PennDOT is essentially acting *ultra vires* in purporting to apply the regulations at issue here to CBM. Of course, "the best indicator of the intent of the General Assembly is the plain language of the statute." *E. Coast Vapor*, 189 A.3d at 518. Where a statute's

---

[6] The regulations relevant to this case, contained in Title 67, Chapter 171 of the Pennsylvania Code, "School Buses and School Vehicles," were "issued under [Sections 4551, 4552 and 4553 of] the Vehicle Code, 76 Pa.C.S. §§ 4551, 4552 and 4553 . . . ." *See* 67 Pa. Code 171 (Authority). In addition to Section 4551, discussed more fully herein, Section 4552 sets forth requirements for school buses and, in paragraph (h), directs PennDOT to issue regulations to implement Section 4552, noting specifically that those regulations "shall not require vehicles which pick up and discharge school children only at locations off the highway to be of any particular color or to display flashing red and amber lights." 75 Pa.C.S. § 4552(h). Finally, Section 4553 sets forth general requirements for other vehicles transporting school children. 75 Pa.C.S. § 4553. Because Section 4551 is the statute that does the work in defining the scope of PennDOT's regulatory authority in this area, it is the relevant statute for the analysis.

RCJ - 4

text is unambiguous, we must read its provisions according to "their plain meaning and common usage." *Id.* Only having found ambiguity may we consider, *inter alia*, "administrative interpretations." Section 1928(c)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(c)(8).

Respectfully, the Majority erred in looking to PennDOT's own regulatory definitions **before** consulting the text of the enabling statute. The Majority analyzes whether CBM's released time program counts as a "school" under PennDOT's regulatory definition found at 67 Pa. Code § 171.2. *C B M*, slip op. at 7. However, not having concluded whether the **enabling statute** permits application of PennDOT's regulations in the first instance, the Majority erred in consulting PennDOT's own definition of "school." After concluding that CBM's vehicles do not amount to "multi-function school activity buses" (MFSABs) under PennDOT's regulations, the Majority "conclude[s] that CBM is not a 'school' under the regulations either. *Id.* at 9. I must disagree with the Majority's error in not engaging first in a fulsome statutory construction of the enabling statute, which error also infected its analysis of the regulations' text.

In my view, the plain language of the enabling statute provides clear authority to PennDOT to apply the regulations in this case to CBM's vehicles. Consider the plain meaning of the operative language of the enabling statute. A "private school" is a "school that is established, conducted, and primarily supported by a nongovernmental agency." Webster's Ninth New Collegiate Dictionary 988 (1991). A "parochial school" is a "private school maintained by a religious body usu[ally] for elementary and secondary instruction." *Id.* at 902. And a "school" is an "organization that provides **instruction**." *Id.* at 1111 (emphasis added).

It is undisputed that CBM is a private, religious organization and that it provides instruction—based on a curriculum—for its students. Therefore, in substance, it is providing education to elementary students. The General Assembly has also specifically prescribed that release time must include "classes" and "instruction." *See* 24 P.S. § 15-1546 ("The superintendent of the school district shall, upon the written request of a parent or other person in loco parentis, excuse any student . . . from school attendance . . . in order to attend **classes** for religious **instruction**[.]") (emphasis added). In substance, then, CBM is functioning as a parochial, private school when it operates its released time programs. Accordingly, the plain language of the enabling statute authorized PennDOT to promulgate regulations that apply to CBM's vehicles, and that language evinces an intent on the part of the General Assembly to regulate a wide range of vehicles on which children might ride. *See* 75 Pa.C.S. § 4551 ("**[a]ll school buses and all other vehicles used in the transportation of school children, owned by or under contract with any . . . parochial or private school** . . . ") (emphasis added).

Only having determined that PennDOT can apply these regulations to CBM do we turn to the regulations. As a threshold matter, I do not believe we need to even reach PennDOT's regulatory definition of school, having already determined CBM, here, counts as one of the covered entities under the enabling statute. That said, to the extent it would be necessary to reach that definition, I cannot agree with the Majority that CBM is not a "school" as defined in Section 171.2 of PennDOT's regulations.[7] The regulations define "school" as "[a]n institution for the education or training of children, including but not limited to kindergartens, rehabilitation

_____

[7] We have recognized that "[s]tatutory construction rules apply equally to the interpretation of administrative regulations." *Wheeling-Pittsburgh Steel Corp. v. Dep't of Env't Prot.*, 979 A.2d 931, 937 (Pa. Cmwlth. 2009).

centers, day care centers, Head Start centers, group day care homes, family day care homes and summer camps." 67 Pa. Code § 171.2. The Majority posits that CBM's "wholly religious aim" makes it unlike the examples PennDOT provides in its regulations." *C B M*, slip op. at 7. I respectfully disagree. First, the regulation is clear that it intends to cover a broad range of institutions that "educat[e] or train[] [] children." 67 Pa. Code § 171.2. The undisputed facts here show that CBM intends to educate and train children via the released time program, and the released time statute requires it to provide classes and instruction. The operative language being clear, I would simply stop there and conclude that, for purposes of this regulatory definition, CBM is a school when it operates its released time program.

However, the Majority, without saying so, seemingly applies the canon of *noscitur ad sociis* to exclude CBM's released time program from the sweep of the regulation's definition of school. *Noscitur ad sociis* is the canon that provides that "[w]ords are known by the company they keep," and so "the meaning of a **doubtful** word may be ascertained by reference to the meaning of words associated with it." *S.A. v. Pittsburgh Pub. Sch. Dist.*, 160 A.3d 940, 945 (Pa. Cmwlth. 2017) (citations and quotation marks omitted) (emphasis added). I would first note that application of that canon has no place here, where the regulatory text is clear that a "school," for purposes of the definition, is "[a]n institution for the education or training of children." 67 Pa. Code § 171.2. The language the regulation's drafters chose evinces, consistent with the enabling statute, an intent of broad coverage. However, even applying *noscitur ad sociis*, I would conclude that CBM's released time activities render it a "school" under this definition. The list of institutions listed as examples is breathtakingly broad; indeed, the major differences among summer camps on the one hand and family day care homes and rehabilitation centers on the

RCJ - 7

other are obvious. The Majority attempts to curb that breadth by pointing to CBM's "wholly religious aim." *C B M*, slip op. at 7. Nothing in the regulation excludes an institution with a religious aim. The bottom line here is that the plain text says CBM's released time program counts as a school. The Majority implicitly turns to and misapplies a canon that we should use "to resolve ambiguity, not create it." *Yates v. United States*, 574 U.S. 528, 564 (2015) (Kagan, J., dissenting).

Moreover, the Majority credits an unsound argument proffered by CBM, namely that "unless every church and synagogue in Pennsylvania that offers religious classes to children is now a 'school,' then CBM's religious programming cannot be deemed a 'school.'" *C B M*, slip op. at 8-9. The fatal flaw of that argument is that it fails to give effect to the language of the enabling statute, which by its plain terms restricts the sweep of these regulations to "[a]ll school buses and other vehicles used in the transportation of school children, owned by or under contract with any school district or parochial or private school . . . ." 75 Pa.C.S. § 4551(a). A church or synagogue, providing religious instruction in a manner wholly **unrelated** to a child's school day or public education is undoubtedly **not** a school district, private school, or parochial school. In sum, the conclusion that my interpretation would somehow permit PennDOT to define a church as a school is simply not warranted by a careful examination of the enabling statute together with the regulation's text.

Next, unlike the Majority, I would conclude that CBM's vehicles are MFSABs, or "school bus[es] used to transport students on field trips, athletic trips, or other curricular or extracurricular activities, but not used for to-and-from school transportation." 67 Pa. Code § 171.2. "School bus" is defined as "[a] motor vehicle designed to carry 11 passengers or more, including the driver, and used for the transportation of . . . school students to or from public, private[,] or parochial schools

or events related to these schools or school-related activities." *Id.* Having concluded that CBM is a school for purposes of the regulations, I believe the plain text of the definition of "[s]chool bus" encompasses CBM's released time activities because **CBM**, a **school** for present purposes, is transporting elementary students during the school day "to and from . . . events related to [it]." *Id.* Reading **CBM**, and not the public school, as the relevant "school" for the definition of a MFSAB and school bus, then, dispenses with the Majority's fear about an Establishment Clause violation, U.S. CONST. amend. I.[8] *See C B M*, slip op. at 9.

In addition, I am not at all convinced by CBM's argument, which the Majority adopts whole cloth, that CBM's "vehicles do not transport 'school children' as required by the enabling statute." *C B M*, slip op. at 10. The theory goes that the General Assembly refers to children as "'school children,' 'students,' and 'pupils' when referring to minors who are attending school at a given moment, but use the terms 'child' or 'minor' when they are not." *Id.* It follows then, according to the Majority, children lose their status as "school children" the moment they step onto

---

[8] Moreover, I would be more cautious than the Majority in attempting to determine what activities can "lawfully be considered a school-related curricular or extra-curricular activity under the Establishment Clause." *C B M*, slip op. at 9. Indeed, since 1952, the Supreme Court of the United States has decided several cases which, at the very least, cast doubt on the Majority's apparent understanding of the Establishment Clause. *See, e.g.*, *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 102 (2001) (holding religious club has a First Amendment right to hold club meetings on public school grounds after school hours—and permitting that religious club to do so presented no Establishment Clause problem); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. __, __ 142 S.Ct. 2407, 2416 (2022) (finding free exercise violation—and no Establishment Clause issue—with public school football coach praying at the 50-yard line at halftime during a football game). I think the Establishment Clause is irrelevant to our analysis here because whether PennDOT can regulate these vehicles has **nothing** to do with whether the released time program itself runs afoul of the Establishment Clause, and nothing we decide today would render the released time program at issue unconstitutional. However, *Good News Club* and *Kennedy* both reveal how dramatically our understanding of the Establishment Clause has transformed since the mid-twentieth century, and so I would be more careful in describing what does or does not pass muster under that Clause.

CBM's vehicles. As a matter of statutory construction, I would reject that argument. "School children" are simply "child[ren] attending school[,]" Webster's Ninth New Collegiate Dictionary 1111 (1991). Having concluded the children are at "school" when they participate in released time, it follows they are school children while there. Notwithstanding, I do not believe children must be attending school at a given moment to be considered school children, as the Majority posits. Indeed, were that the case, children would no longer be school children when participating in after-school public school athletic activities or school-provided transportation to and from, which nobody would dispute is covered by the enabling statute. Describing children as school children is akin to describing someone by their profession. For example, teachers are still teachers when they go home for the day, and as a matter of common usage, we would discern no issue in describing a teacher as such when they are not, that very moment, engaged in their profession. In sum, the term "school children" plainly encompasses children who attend school, whether or not they are attending school at a given moment, such that CBM's vehicles can be said to transport "school children" in harmony with the enabling statute. Indeed, the General Assembly drafted a statute that was concerned with regulating vehicles transporting school children, and children do not lose their status as people who attend school if they are not, at that very moment, attending school.

Having concluded that CBM's vehicles are subject to PennDOT regulations promulgated under Section 4551, and that there is no issue with PennDOT's proposed classification of CBM's vehicles as MFSABs, I would dismiss CBM's argument that such regulation amounts to a substantial burden on its free exercise of religion under Pennsylvania's Religious Freedom Protection Act (RFPA).[9] We have

_____

[9] Act of December 9, 2002, P.L. 1701, 71 P.S. §§ 2401-2408.

explained that for a given regulation to violate RFPA, it must "substantially den[y] an organization] a reasonable opportunity to engage in activities . . . fundamental to its religion." *Ridley Park United Methodist Church v. Zoning Hearing Bd. Ridley Park Borough*, 920 A.2d 953, 960 (Pa. Cmwlth. 2007). But whether CBM could carry the weighty burden of proving that is beside the point in this case because RFPA does not apply to "[a]ny provisions of [the Vehicle Code] which . . . [r]equires the licensing of motor vehicle operators" or "**[p]rotects the public from the unsafe operation of motor vehicles**." Section 6(b)(2)(i), (iv) of the RFPA, 71 P.S. § 2406(b)(2)(i), (iv) (emphasis added). The regulations at issue here, promulgated pursuant to the Vehicle Code, are all about protecting the public, and school children specifically, from unsafe buses. Accordingly, I would find that RFPA has no applicability here.

In our system of government, which is intentionally structured around separation of powers, it matters a great deal that our administrative agencies only regulate within the scope of authority conferred upon them by our General Assembly. As a court, however, it also matters that we leave policy determinations to the General Assembly, which means neither reading statutes and regulations too broadly **nor** reading them too narrowly. I fear the Majority's overly narrow reading of the enabling statute thwarts the legislature's intent, pursuant to its police power, to empower PennDOT to keep children safe when they are being transported to and from public school during the school day. Therefore, I respectfully dissent.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Wojcik joins in this dissent.

RCJ - 11